PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 11-2553 and 11-2669
_____

GLENFORD RAGGUETTE,

Appellant in No. 11-2553

v.

PREMIER WINES & SPIRITS,

Appellant in No. 11-2669

_____

On Appeal from the District Court
of the Virgin Islands
(D.C. Civil No. 2-06-cv-00173)
District Judge: Hon. Timothy J. Savage
_____

Argued May 9, 2012

BEFORE: CHAGARES, JORDAN and
COWEN, Circuit Judges

(Filed: August 15, 2012)

Lee J. Rohn, Esq.
E. Geoffrey Wolfe, Esq. (Argued)
Lee J. Rohn & Associates
1101 King Street
Christiansted, VI 00820

    Counsel for Appellant in No. 11-2553

Anna H. Paiewonsky, Esq. (Argued)
6501 Red Hook Plaza, Suite 201
St. Thomas, VI 00802

    Counsel for Appellant in No. 11-2669

_____

OPINION
_____

COWEN, <u>Circuit Judge</u>.

    Plaintiff Glenford Ragguette appeals from the order of the District Court of the Virgin Islands granting the motion for summary judgment filed by Defendant Premier Wines and Spirits, Ltd.  In turn, Premier appeals from the order of the District Court granting Ragguette's motion for an extension of time to file a notice of appeal under Federal Rule of Appellate Procedure 4(a)(5).  We hold that the District Court abused its discretion by finding that Ragguette established "excusable neglect" under this rule.  We accordingly

2

determine that the motion for an extension of time to file a notice of appeal under Rule 4(a)(5) was improvidently granted. We will therefore dismiss Ragguette's appeal for lack of appellate jurisdiction.

I.

Ragguette alleged a number of employment discrimination and related claims against his former employer, Premier. Throughout this litigation, Ragguette has been represented by attorneys from a firm currently known as Lee J. Rohn & Associates—and primarily by Lee J. Rohn, Esquire, herself.

In a January 5, 2010 order, the District Court granted Premier's summary judgment motion and entered judgment in favor of Premier and against Ragguette. The District Court provided its reasons for this determination in an accompanying memorandum opinion entered on the same day.

Ragguette's counsel failed to file a notice of appeal within 30 days of the judgment or order pursuant to Federal Rule of Appellate Procedure 4(a)(1)(A). On January 13, 2010, Premier filed a motion for attorneys' fees and costs under Federal Rule of Civil Procedure 68, specifically asking for the award to be directed (jointly and severally) against Ragguette and his counsel. Ragguette submitted an opposition to this fee motion on January 28, 2010. In a February 8, 2010 order, the District Court scheduled a fee hearing for February 23, 2010. But, on February 24, 2010,

3

the hearing was rescheduled for March 1, 2010.  Following this hearing, Premier filed a contested motion to amend its fee motion, requesting, among other things, a fee award directed against Rohn in her individual capacity.  The original motion and the motion to amend, however, were subsequently withdrawn by Premier.

On March 5, 2010, Ragguette filed a motion for issuance of an order pursuant to Federal Rule of Civil Procedure 58(e), or, in the alternative, for an order granting an extension of time to file a notice of appeal pursuant to Federal Rule of Appellate Procedure 4(a)(5).  With respect to the alternative form of relief, he argued, inter alia, that his attorney's failure to file a timely notice of appeal was caused by excusable neglect.  In short:

> Because of trial preparation for several other cases, counsel failed to actually issue the computer task.  Specifically, counsel annotated the order as to appeal issues and provided it to the secretary on the case.  The procedure in the office is that a task should have been generated by counsel to file the notice of appeal at the same time.  The secretary scanned the order with the annotation in to the system on January 11, 2010 (**Exhibit 1**) but because there was no task did not prepare the appeal.  Counsel was unaware that the notice of appeal had not been e-filed and did not discover the same until preparing for the hearing on the fee issue when she did not find a notice of appeal in the

4

computer file.

In this case, the failure to file a timely notice of appeal was due to excusable neglect, so as to warrant the granting of the motion for extension of time. The objective record shows that lead counsel for Plaintiff "annotated the Memorandum Opinion of the summary judgment ruling to be used to draft the notice of appeal to move to appeal on the grounds as noted in the annotated document, and on the ground of the rulings denying discovery. See screen shot showing date the annotated judgment was scanned as of January 11, 2010 (**Exhibit 1**). Counsel had requested that the annotated motion be scanned into the appeals file. See, **Exhibit 1**, the annotations on the Memorandum. Counsel was in trial and in mediations and then off island as set forth herein.

It has now come to counsel's attention that all that was done was that the annotated Memorandum Opinion was scanned. The fact that counsel was off-island, and the fact that in her absence, the notice would have been prepared and reviewed and filed by another staff attorney, Counsel reasonably thought that the task had been issued.

(A343-A344 (error in original).) A so-called "screen shot"

5

(which listed a pdf file entitled "Annotations-re-Memorandum-Opinion-and-Thoughts-for-Appeal-01/11/2010" and indicated that this document was last modified at 7:44 a.m. on January 11, 2010) was attached as Exhibit 1 to Ragguette's motion. (Dist. Ct. Dkt. Entry #137-1.)

Premier filed its opposition to this motion on March 16, 2010, and Ragguette submitted a reply on April 1, 2010. He also submitted an affirmation from Rohn herself as well as an annotated copy of the District Court's January 5, 2010 memorandum opinion (attached as Exhibit A). Rohn provided the following explanation for why the notice of appeal had not been filed:

> 2. As represented in the Motion for Issuance of An Order pursuant Pursunat-to-FRCP 58(e)-or-in-the-Alternative-an-Order-Granting-an-Extention-of-Time-to-File-a-Notice-of-Appeal-03-05-2010 after annotating the court's ruling, I submitted to my legal assistant and new motions attorney the annotated ruling, with the intention that a notice of appeal should be filed on the grounds as annotated in the ruling. See, **Exhibit A**, Annotated Ruling.
>
> 3. I had a mental lapse and failed to realize I was working with my relatively new motion attorney and not my former associate and partner of over 11 years who would have

6

correctly interpreted my notes and automatically calendared and drafted a notice of appeal without the need of a specific task, instead of simply filing the annotated decision. I further intended to issue a task and reasonably thought I had done so. It appears I either didn't send the task or didn't complete the procedure as no task was generated by the computer.

4. That my intention was to appeal the ruling is manifest from the annotated decision.

5. Given the press of matters requiring my attention, matters that are objectively verifiable, it is understandable and reasonable under the circumstances that this oversight occurred.

6. I honestly believed that a notice of appeal was filed in accordance with my annotations on the decision.

7. I did not mention the intent to appeal during the hearing regarding the motion for fees because I wanted to verify my records as to what occurred.

(A355-A356 (errors in original).) There were a number of handwritten comments and notations on the annotated memorandum opinion. Most significantly, the following comment was written at the top of the first page: "*<u>Scan in as 'thoughts Re appeal'</u>." (A357.)

7

The District Court denied Ragguette's motion on May 14, 2010. Ragguette filed a notice of appeal on May 20, 2010 (a notice of appeal was previously entered on the docket on May 17, 2010, but Ragguette was then directed to refile using the correct prompt). On April 19, 2011, we upheld the District Court's denial of his request for an order under Federal Rule of Civil Procedure 58(e) because Premier never filed the appropriate motion for fees and costs pursuant to Federal Rule of Civil Procedure 54(d)(2). However, we vacated the District Court's denial of his request for relief under Rule 4(a)(5) and remanded "the case to the District Court to analyze whether the neglect at issue in this case was excusable under the Pioneer standard." Ragguette v. Premier Wines & Spirits, Ltd., 424 F. App'x 155, 157 (3d Cir. 2011) (footnote omitted). We explained that the Supreme Court's ruling in Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership, 507 U.S. 380 (1993), established an equitable approach to the "excusable neglect" determination. While a court must still take into account all of the relevant circumstances, "Pioneer provides four factors to consider when making this equitable determination: (1) the danger of prejudice to the non-movant; (2) the length of the delay and the impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith." Ragguette, 424 F. App'x at 156-57 (citing Pioneer, 507 U.S. at 395). We concluded that the District Court abused its discretion by disposing of the Rule 4(a)(5) motion "'without an opinion, without a reason, and more importantly, without reference to the Pioneer four-factor

8

balancing standard.'" Id. at 157 (quoting In re Diet Drugs Prods. Liab. Litig., 401 F.3d 143, 154 (3d Cir. 2005))).

On May 16, 2011, Premier filed its supplemental opposition to the Rule 4(a)(5) motion. Among other things, Premier referred to Ragguette's testimony at a recusal hearing held before the District Court on January 26, 2011. It also submitted a letter to Ragguette from a legal assistant at the Rohn law firm named Enith Abraham, which was dated January 14, 2000 and stated that the enclosed documents were being returned to him for his records. Most significantly, Premier attached as an exhibit a series of e-mails exchanged by Rohn and Glenda Cameron, Esquire (who was then working with the firm on a contract basis), which had been produced in connection with an unsuccessful recusal motion previously filed by Ragguette and other Rohn clients.

Rohn began the rather lengthy e-mail chain at 2:03 p.m. on March 1, 2010:

> it appears that the order on summary judgment came in on January 5, 2010. although I did an annotation of the order and instructed taht it be placed in the appeal file after the finling of the notice of appeal, the appeal was not filed. i only learned about it to day when prepping for argument on the issue of whether defendant can be awarded fees and costs. that hearing was today. the motion had originally been brought under rule 68 re offer of judgment. but at argument today the defendant stated it wanted

9

to add an argument under title vii that the complaint was frivolous and as such defendant should be awarded fees. the judge then invited her to also make an argument that the fees should be against counsel and not plaintiff. we argued the motion woould not be timely and opposed. court granted her a week to amend her motion to add issues re why case was frivolous etc and why fees should be awarded under title vii. can I use that pending motion to file the appeal of hte underlying order for sj to wait and file appeal until that motion is ruled on? if not is there someway I can file the appeal out of time.

(A406 (errors in original).) The two attorneys then exchanged e-mails addressing, among other things, the different options that could be available to pursue an appeal, when any motion for relief should be filed and what should be included, legal research, and the drafting of the motion itself. Asked by Cameron to provide "facts showing 'good cause' for the failure to file the notice of appeal," Rohn explained that:

I annotated the sj ruling and stated move to appeal along with rulings denying discovery. Please scan in appeal file. Instead all that was done was it was scanned into appeal file. I got a task response done. I thought it meant both. It only meant scanned. Normally under old rules I would know if notice done because it would

10

have been signed and physically filed. With
new if I am not there it just gets e filed so I have
no way of on hand monitoring. I did not realize
not filed til prepared for argument on atty fees
motion

(A396 (errors in original).)

On May 20, 2011, the District Court conducted a
hearing on the Rule 4(a)(5) motion. Ragguette was not
present, but Rohn provided a detailed (if unsworn) account of
what had happened.

Rohn told the District Court that her firm used a
system of "computer tasks" and "paper tasks" for making and
monitoring assignments. The Outlook computer program's
task system apparently allows Rohn to assign a particular task
to a specific subordinate together with a deadline for
performing the task itself. If the subordinate does not
complete the task within the time limit, "that task comes back
to you in red saying, this task has not been done." (A451.)
On the other hand, there is also "the physical paper, and the
conversation." (Id.) Rohn claimed that, although she
believed that she had successfully generated both a computer
task as well as a paper task, she actually only ever created a
paper task.

Rohn further explained that the new attorney or
appellate motions clerk assigned this task ultimately worked
for the firm for less than a year (and, at the time at issue here,
had not been with the firm for a very long time). Rohn

11

confirmed that "I don't get any ECF[1] files at all, because I don't monitor those deadlines," and that, instead, "all the ECF filings in my office, even [those] directed to me internally through technology, go to the attorney who is actually in charge of monitoring those [cases]." (A440 (footnote added).) Although a self-confessed "control freak" who likes to review every document with her signature (A444), it is still possible that she would not review a particular motion, even though it has her "computer signature on it," if she was unavailable at the time that the document had to be filed (A441). She denied taking the position that she missed the deadline in this case simply because there "was just too much going on." (A444.) In contrast, she purportedly missed this deadline because she believed the notice of appeal had been filed given the fact that she "instructed that it be filed" and "gave the document to the motions clerk to assign it and to do the notice of appeal," which would then have gone out (after being reviewed by at least one attorney at her firm) as a non-substantive but time-sensitive filing. (A444-A445.) In other words, Rohn's various activities at the time that the notice of appeal should have been filed established "why the appeal, the notice of appeal to be signed would not have necessarily come to me" and why she "wouldn't have notice that someone else didn't sign the notice of appeal." (A445-A446.) Rohn further indicated that, after the entry of the summary judgment order, she consulted with her client about filing an

---

[1]     The Case Management / Electronic Case Filing (CM/ECF) system is a computer case management system that allows courts to maintain electronic case files and attorneys to file (and serve) documents through the Internet.

12

appeal and that he was in agreement with this course of action. She also claimed that it was not her experience that the Third Circuit sends out scheduling orders within 7 to 10 days of the filing of a notice of appeal. According to Rohn, this Court instead sends out a mediation order around 30 days after the notice of appeal's filing, and a transcript purchase order or anything else would have gone to Rohn's associate— not Rohn. In any case, she purportedly would have discovered the oversight when the appellate briefing schedules were not issued 45 or 60 days after the notice of appeal was supposed to be filed.

In the end, Rohn accepted "responsibility that while I believed that I had followed my regular procedure of the office, which is a computer tasking system to follow deadlines, it appears that I inadvertently did not do so." (A451.) She defended her firm's "very involved expensive computer system to track documents," and claimed that this case involved nothing more than unfortunate "human error," which is the kind of mistake that everybody makes. (A452.)

On June 7, 2011, the District Court granted Ragguette's motion for an extension of time to file a notice of appeal under Rule 4(a)(5). Applying the Pioneer factors, the District Court focused on the circumstances as they existed on the day the motion was actually filed. It did so because any subsequent delay cannot be attributed to Ragguette and instead resulted from the judicial proceedings. "Ragguette offers his attorney's mistake in following-up instructions to her staff to file a notice of appeal as the excuse for missing the filing deadline." Ragguette v. Premier Wines & Spirits,

13

<u>Ltd.</u>, Civil Action No. 2006-0173, 2011 WL 2359920, at *1 (D.V.I. June 7, 2011). According to the District Court, Ragguette had failed to articulate any specific reason for not filing a timely notice of appeal in his original motion and had instead merely cited to his attorney's busy schedule. At the hearing, his attorney "represented that she had made a mistake when she failed to complete an additional step in the computer process in her office," which meant that "her staff never received the instructions to perfect an appeal." <u>Id.</u> In turn, this attorney provided support for her representation "with a screen shot of the computer message." <u>Id.</u> The District Court also acknowledged that the "timing of the Rule 4 motion is consistent with the defendant's suspicion [that Ragguette never intended to take an appeal and that his attorney decided to file one in retaliation for Premier's fee proceeding]," but it then added that there was no evidence to confirm this suspicion. <u>Id.</u> Therefore, the District Court found that the failure to file the notice of appeal was caused by attorney "inadvertence." <u>Id.</u> It then stated that:

> The delay, measured at the time Ragguette filed his motion, was twenty-nine days, but within the time for filing the Rule 4 motion. His attorney stated that only when she was preparing for the hearing on the motion for attorney's fees did she realize that the appeal had not been taken. She then sought advice on how to remediate her failure. There is no indication that she purposefully waited until the penultimate day to file the motion. Under the circumstances, the delay was not inordinate.

14

Nor was it in bad faith. The defendant argues that it will be prejudiced by the passage of time because witnesses have become unavailable and memories are fading. It also complains about the significant costs it has expended since the entry of judgment in its favor and will incur in the future. The first concern regarding the witnesses is not compelling. Ragguette seeks leave to appeal. No witnesses are necessary on appeal. The record is closed. In the event Ragguette's appeal is denied, there will be no need for witnesses. On the other hand, if he prevails, witnesses will be necessary at a trial. The defendant would face either situation had Ragguette filed a timely appeal. Nor is there evidence that defendant has incurred any significant costs since the entry of judgment, or that it will incur significant future costs connected to this motion. Again, at this point, any delay beyond the twenty-nine days was not Ragguette's fault. Moreover, there is no demonstration of actual harm to the defendant as a result of the late filing.

Id. at *1.

Pursuant to the District Court's order granting his Rule 4(a)(5) motion, Ragguette filed, on June 8, 2011, a notice of appeal with respect to the order granting summary judgment. Premier likewise appealed from the District Court's Rule 4(a)(5) order itself, which this Court has treated as a cross-

15

appeal.

## II.

The District Court had jurisdiction over this employment case pursuant to 28 U.S.C. §§ 1331 and 1367. As we explain in more detail in Section III, infra, we must dismiss Ragguette's appeal because of the absence of appellate jurisdiction.

It is uncontested that this Court generally reviews a district court's decision whether or not to grant an extension of time to file a notice of appeal for an abuse of discretion. See, e.g., In re Diet Drugs Prods. Liab. Litig., 401 F.3d 143, 153 (3d Cir. 2005). The district court abuses its discretion if its decision rests upon a clearly erroneous finding of fact, an errant conclusion of law, or the improper application of law to fact. See, e.g., In re Cendant Corp. Prides Litig., 233 F.3d 188, 192 (3d Cir. 2000). "An abuse of discretion may also occur when 'no reasonable person would adopt the district court's view.'" Id. (quoting Oddi v. Ford Motor Co., 234 F.3d 136, 146 (3d Cir. 2000)). "Finally, 'we will not interfere with the [D]istrict [C]ourt's exercise of discretion "unless there is a definite and firm conviction that the court . . . committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors."'" Id. (quoting same).

## III.

28 U.S.C. § 2107(a) states that: "Except as otherwise provided in this section, no appeal shall bring any judgment,

16

order or decree in an action, suit or proceeding of a civil nature before a court of appeals for review unless notice of appeal is filed, within thirty days after the entry of such judgment, order or decree." Pursuant to this statutory provision, Federal Rule of Appellate Procedure 4(a)(1)(A) provides that, "[i]n a civil case, except as provided in Rules 4(a)(1)(B), 4(a)(4), and 4(c), the notice of appeal required by Rule 3 must be filed with the district clerk within 30 days after entry of the judgment or order appealed from." The Supreme Court has determined that "the timely filing of a notice of appeal in a civil case is a jurisdictional requirement." Bowles v. Russell, 551 U.S. 205, 214 (2007).

Ragguette was required to file a notice of appeal within the applicable 30-day time period following the January 5, 2010 entry of the order granting Premier's motion for summary judgment. In other words, he had to file his notice of appeal on or before February 4, 2010. He clearly failed to do so.

However, the district courts do "have limited authority to grant an extension of the 30-day time period." Id. at 208. 28 U.S.C. § 2107(c) provides that "[t]he district court may, upon motion filed not later than 30 days after the expiration of the time otherwise set for bringing appeal, extend the time for appeal upon a showing of excusable neglect or good cause." Federal Rule of Appellate Procedure 4(a)(5) authorizes a party to file such a "Motion for Extension of Time." This rule currently provides that:

> **(A)** The district court may extend the time to file a notice of appeal if:

17

**(i)** a party so moves no later than 30 days after the time prescribed by this Rule 4(a) expires; and

**(ii)** regardless of whether its motion is filed before or during the 30 days after the time prescribed by this Rule 4(a) expires, that party shows excusable neglect or good cause.

**(B)** A motion filed before the expiration of the time prescribed in Rule 4(a)(1) or (3) may be ex parte unless the court requires otherwise. If the motion is filed after the expiration of the prescribed time, notice must be given to the other parties in accordance with local rules.

**(C)** No extension under this Rule 4(a)(5) may exceed 30 days after the prescribed time or 14 days after the date when the order granting the motion is entered, whichever is later.

Ragguette filed his motion on Friday, March 5, 2010, which was 59 days after the entry of the order. Because the 60th day was a Saturday, he actually had until the next business day, Monday, March 8, 2010, to file his Rule 4(a)(5) motion. See, e.g., Fed. R. App. P. 26(a)(1)(C). In any case, Ragguette thereby "filed a timely motion for an order granting an extension of time to file a notice of appeal under Fed. R. App. P. 4(a)(5)." Ragguette, 424 F. App'x at 155 (footnote

18

omitted).  Because this motion was filed in a timely fashion (and the "good cause" component of the rule is not at issue here),[2] the basic question now before us is whether or not the

---

[2] The good cause standard "applies in situations in which there is no fault – excusable or otherwise."  Fed. R. App. 4 (Advisory Committee's Notes on 2002 Amendments).  Courts, including our own, historically held that the "good cause" language in Rule 4(a)(5) was inapplicable if the request for the extension was made after the period for filing a timely notice of appeal expired.  See, e.g., Consol. Freightways Corp. of Del. v. Larson, 827 F.2d 916, 918 n.3 (3d Cir. 1987) (explaining that "good cause" is basis for extending time to file appeal "only if the request is made within the original 30 day period for taking the appeal" and that "[a]ny request for extension filed after the original period has run is governed by the excusable neglect standard" (citations omitted)); Fed. R. App. P. 4 (Advisory Committee's Notes on 2002 Amendments) (describing "misunderstanding" whereby "most of the courts of appeals have held that the good cause standard applies only to motions brought prior to the expiration of the original deadline").  The rule was amended in 2002 to make clear that any that any such interpretation is mistaken and that "good cause" and "excusable neglect" are separate bases upon which a Rule 4(a)(5) extension can be granted regardless of when the requesting motion is made.  See Fed. R. App. P. 4 (Advisory Committee's Notes on 2002 Amendments) ("[A] motion for an extension filed during the 30 days following the expiration of the original deadline may be granted if the movant shows either excusable neglect or good cause.").

District Court abused its discretion by finding that Ragguette (and Rohn) established "excusable neglect" under Rule 4(a)(5). We must answer this question in the affirmative.

In our previous ruling in this case, we turned to the factors identified by the Supreme Court in <u>Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership</u>, 507 U.S. 380 (1993). The Court considered the meaning of the term "excusable neglect" in the specific context of a bankruptcy rule permitting a late filing of a proof of claim by a creditor if the failure to comply with the deadline (or "bar date") was the result of excusable neglect. <u>Id.</u> at 382-83. Most significantly, it emphasized that the whole notion of excusable neglect implicates an equitable inquiry and thereby went on to provide a number of factors to be taken into account in this analysis:

> This leaves, of course, the Rule's requirement that the party's neglect of the bar date be "excusable." It is this requirement that we believe will deter creditors or other parties from freely ignoring court-ordered deadlines in the hopes of winning a permissive reprieve under Rule 9006(b)(1). With regard to determining whether a party's neglect of a deadline is excusable, we are in substantial agreement with the factors identified by the Court of Appeals. Because Congress has provided no other guideposts for determining what sorts of neglect will be considered "excusable," we conclude that the determination

20

is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission. These include, as the Court of Appeals found, the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.

Id. at 395 (footnotes omitted) (citations omitted). "Although inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect, it is clear that 'excusable neglect' under [Federal Rule of Civil Procedure] 6(b) [allowing district courts to enlarge the period of time] is a somewhat 'elastic concept,' and is not limited strictly to omissions caused by circumstances beyond the control of the movant." Id. at 392 (footnotes omitted). On the other hand, the neglect of both the party as well as the party's own attorney must be taken into account, and the Pioneer Court accordingly rejected the circuit court's suggestion that it would be improper to penalize a party for the omissions of counsel. Id. at 396-97.

The Supreme Court noted that the debtor did not challenge the bankruptcy court's findings concerning the creditors' good faith and the absence of any danger of prejudice to the debtor or of disruption to efficient judicial administration. Id. at 397-98. It further indicated that it was not inclined to unsettle factual findings entered by a bankruptcy court and upheld by both the district and circuit

21

courts on appeal. Id. In fact, the bankruptcy court observed that the debtor's reorganization plan had taken into account the late claims. Id. In the absence of any evidence of prejudice, disruption, or bad faith, "the unusual form of notice [of the bar date] employed in this case requires a finding that the neglect of respondents' counsel was, under all the circumstances, 'excusable.'" Id. at 398-99. The Pioneer Court also noted that counsel was still "remiss in failing to apprehend the notice," and it accorded "little weight to the fact that counsel was experiencing upheaval in his law practice at the time of the bar date" in assessing his "culpability." Id. at 398.

We have applied Pioneer's equitable approach in a variety of circumstances, including proceedings under Rule 4(a)(5). See, e.g., In re Diet Drugs Prods. Liab. Litig., 401 F.3d 143, 153-54 (3d Cir. 2005). However, even prior to the Supreme Court's opinion, we addressed at some length the "excusable neglect" concept in the specific context of a motion for an extension of time to file a notice of appeal pursuant to Rule 4(a)(5).

In Consolidated Freightways Corp. of Del. v. Larson, 827 F.2d 916 (1987), the Pennsylvania Attorney General's Office prepared a notice of appeal in a Middle District of Pennsylvania case on December 18, 1986, one day before the 30-day limit for filing a notice of appeal expired. Id. at 917. However, the notice of appeal incorrectly identified the district as the Eastern District of Pennsylvania. Id. Instead of being hand delivered to the Middle District Clerk's Office in Harrisburg (which was actually adjacent to the Attorney

22

General's Office), it was mailed to the Eastern District Clerk's Office (which received the document on December 22, 1986 and then forwarded it to the Middle District, where it arrived on December 24, 1986). Id. When notified by the Third Circuit Clerk's Office of a possible procedural defect, counsel immediately applied for a 5-day extension of time. Id. at 917-18. The district court denied this motion, but we concluded that "the district court erred as a matter of law in its rigid application of 4(a)(5)." Id. at 918.

Rejecting the district court's attempt to establish a per se standard, we emphasized that the rule "requires a case-by-case analysis" as well as specific findings by the district court regarding "the reasons underlying counsel's inadvertence." Id. at 919. Noting the existence of "a qualitative distinction between inadvertence which occurs despite counsel's affirmative efforts to comply and inadvertence which results from counsel's lack of diligence," we went on to provide a non-exclusive list of factors to guide the district court's exercise of discretion:

> Although every case must be examined on an ad hoc basis and it is impossible to compose an exhaustive list of factors relevant to a determination of whether excusable neglect has occurred, a thoughtful analysis of this issue in a particular context will, at a minimum, require a weighing and balancing of the following factors: (1) whether the inadvertence reflects professional incompetence such as ignorance of the rules of procedure, Campbell

23

v. Bowlin, 724 F.2d 484 (5th Cir. 1984) (failure to read rules of procedure not excusable); (2) whether the asserted inadvertence reflects an easily manufactured excuse incapable of verification by the court, Airline Pilots v. Executive Airlines, Inc., 569 F.2d 1174 (1st Cir. 1978) (mistake in diarying counsel's calendar not excusable); (3) whether the tardiness results from counsel's failure to provide for a readily foreseeable consequence, United States v. Commonwealth of Virginia, 508 F.Supp. 187 (E.D. Va. 1981) (failure to arrange coverage during attorney's vacation which encompassed end of appeal period not excusable); (4) whether the inadvertence reflects a complete lack of diligence, Reinsurance Co. of America, Inc. v. Administratia, 808 F.2d 1249 (7th Cir. 1987); or (5) whether the court is satisfied that the inadvertence resulted despite counsel's substantial good faith efforts toward compliance.

Id. at 919.

We then determined, inter alia, that: (1) the attorney's mistake was not the result of professional incompetence; (2) he was not attempting to create some sort of facile excuse to extend the time to appeal and, on the contrary, gained nothing from his error; (3) this type of human error, though avoidable, was not readily foreseeable; and (4) the attorney otherwise acted with due (if not perfect) diligence and in good faith in

24

attempting to comply with Rule 4(a)(5) (including, among other things, drafting the notice of appeal within the 30-day limit, serving the notice of appeal on opposing counsel in a timely fashion, and then expeditiously filing a motion for an extension of time). Id. at 919-20. "This court interprets Rule 4(a)(5) to require a finding of excusable neglect in those instances where the court, after weighing the relevant considerations is satisfied that counsel has exhibited substantial diligence, professional competence and has acted in good faith to conform his or her conduct in accordance with the rule, but as a result of some minor neglect, compliance was not achieved." Id. at 920. While emphasizing that the mistake there could have been detected by careful proofreading, we believed that even the most diligent attorneys are subject to these kinds of common human errors and, in particular, do not need to be reminded to address their mail accurately or to caption their cases properly. Id. Even though the district court's approach might have effectively deterred incompetence or callous disregard for the rules in some circumstances, it would serve "little deterrent purpose" in the context of human errors that are "not readily capable of regulatory control." Id. We further noted that, "[w]here as here the delay was minimal, and where the court has determined that the delay was not the result of any bad faith but rather occurred despite counsel's substantially diligent efforts at compliance, the judicial interest in deciding cases on the merits outweighs the interests in finality." Id. However, we also acknowledged that our opinion "does not require the absolution of any and all clerical errors committed by counsel as excusable neglect," and we were confident that "[t]he threshold requirement of

25

establishing substantial good faith efforts to comply readily eliminates the most common errors from the excusable neglect analysis." Id. at 921. Declining to hold that the failure to proofread a caption must be deemed to be inexcusable in each and every case, we held that such a failure was excusable given the factual context presented. Id.

We agree with Premier that the factors identified in Consolidated should still be considered in applying the overall approach subsequently set forth by the Supreme Court in Pioneer. In fact, we actually cited our Consolidated opinion with approval in our prior ruling in this case vacating the District Court's order and remanding for further proceedings. See Ragguette, 424 F. App'x at 156. Furthermore, our reasoning in Consolidated essentially anticipated the approach taken by the Supreme Court itself, and we note that the Pioneer Court even acknowledged our Consolidated opinion as an example of a circuit court adopting "a more flexible approach," Pioneer, 507 U.S. at 387 n.3. It therefore is not surprising that we have continued to cite to—and quote with approval from—Consolidated as well as our subsequent decision in Dominic v. Hess Oil V.I. Corp., 841 F.2d 513, 517 (3d Cir. 1988) (turning, in service of process context, to five express factors identified in Consolidated as well as sixth factor for "whether the enlargement of time will prejudice the opposing party"). For instance, we indicated that "[t]hese six factors, announced in Dominic before Pioneer was decided, present a more specific application of the general considerations later announced by the Supreme Court in Pioneer." In re Orthopedic Bone Screw Prods. Liab. Litig., 246 F.3d 315, 323 (3d Cir. 2001). In

26

other words, "the Dominic factors that were not restated in Pioneer were instead subsumed in the more general consideration of 'reason for the delay.'" Id. (quoting In re Cendant Corp. Prides Litig., 233 F.3d 188, 196 n.8 (3d Cir. 2000)); see also, e.g., Cendant, 233 F.3d at 197 n.8 ("Additionally, the District Court mentioned the three factors we identified in a case predating Pioneer, Dominic v. Hess Oil V.I., 841 F.2d at 517 (inadvertence reflecting professional incompetence, excuse incapable of verification, complete lack of diligence), though these are arguably integrated within the fourth Pioneer factor, 'reason for the delay.'").

Ragguette, however, contends that, because Premier had argued in the prior appeal in this case that the evidence was legally insufficient to show excusable neglect, this Court necessarily determined in its prior ruling that this evidence was sufficient for the District Court to rule in his favor. Simply put, Ragguette is reading too much into our prior ruling. We merely vacated the District Court's denial and remanded for further proceedings because "the District Court disposed of Ragguette's motion 'without an opinion, without a reason, and more importantly, without reference to the Pioneer four-factor balancing standard." Ragguette, 424 F. App'x at 157 (quoting Diet Drugs, 401 F.3d at 154). It is now our task to ascertain whether the District Court appropriately exercised its discretion by finding that "the

27

neglect at issue in this case was excusable under the <u>Pioneer</u> standard."[3] <u>Id.</u> (footnote omitted).

---

[3] We further note that Premier argues at some length that neither Rohn nor her client ever really intended to pursue an appeal, at least before the 30-day period to file a notice of appeal had already expired. In fact, it vigorously attacks Rohn's own motivations, suggesting, for instance, that "counsel for Ragguette appeared more concerned with avoiding fees and costs being assessed against her." (Premier's Brief at 26.) Based, among other things, on the screen shot, the annotated memorandum opinion, and the subsequent e-mail exchange between Rohn and Cameron, it appears that a prior intention to pursue an appeal did exist in this case. We recognize that that "the timing of the Rule 4 motion is consistent with the defendant's suspicion." <u>Ragguette</u>, 2011 WL 2359920, at *1. Likewise, Rohn's return of documents to Ragguette is suspicious given that such documents would be useful for the appeal that she professed she intended to file. Nevertheless, we believe that the District Court did not abuse its discretion by finding that there was "no evidence to confirm" Premier's suspicion that Rohn was acting in a retaliatory manner. <u>Id.</u>

28

Premier also argues "that the absence of a notice of appeal within 60 days is a factor in the Pioneer test as it pertains to the length of the delay, the reason for the delay and whether counsel acted in good faith and the prejudice to Premier for the delay." (Premier's Brief at 26.) For instance, Premier asserts that the delay at issue here "was from January 5, 2010 to June 8, 2011." (Id. at 30.) While these kinds of considerations do not appear to be totally irrelevant to the Pioneer inquiry, we note that Premier itself acknowledges that this Court "has already ruled that for the purpose of the motion for extension of time a notice of appeal is not required within the 60 days." (Id. at 26.) Observing that any subsequent delay was largely caused by the judicial proceeding itself, the District Court appropriately focused on "the circumstances as they existed on March 2, 2010, when the plaintiff filed his Rule 4(a)(5) motion." Ragguette, 2011 WL 2359920, at *1.

29

We begin, like the District Court, with the "reason for the delay" factor. We agree with Premier that the District Court abused its discretion in its evaluation of this particular factor. We accordingly must reject Ragguette's theory that there was a reasonable explanation for the delay and that this delay resulted from various circumstances beyond the control of his counsel. Simply put, it cannot be said that Ragguette's attorney "has exhibited substantial diligence, [and] professional competence, . . . but as the result of some minor neglect, compliance was not achieved." Consolidated, 827 F.2d at 920. In addition, Ragguette's counsel clearly "fail[ed] to provide for . . . readily foreseeable consequence[s]." Id. at 919 (citations omitted).

---

Because we ultimately conclude that the District Court abused its discretion by finding that Ragguette established excusable neglect, we need not—and do not reach—the various evidentiary challenges raised by Premier in its appeal (i.e., challenging the unsworn statements made by Rohn in the motion papers as well as at the hearing itself). On the other hand, we do reject Ragguette's theory that the Rohn-Cameron e-mail chain was covered by the attorney-client privilege, protected by the attorney work product doctrine, and had been obtained pursuant to an improper order issued by the District Court in conjunction with a consolidated recusal motion. We note that, among other things, Ragguette did not object to the submission of these documents to the District Court in connection with his Rule 4(a)(5) motion, and, on the contrary, Rohn actually relied on this documentation at the Rule 4(a)(5) hearing.

30

Initially, the District Court found that the failure to file the notice of appeal was caused by attorney inadvertence—specifically Rohn's own failure "to complete an additional step in the computer process in her office," which meant that "her staff never received the instructions to perfect an appeal." Ragguette, 2011 WL 2359920, at *1. We add that it appears highly doubtful that the firm's relatively new motions or appellate attorney would have understood that she was to have prepared and filed a notice of appeal based on the following cursory comment on the annotated memorandum opinion: "*Scan in as 'thoughts Re appeal'." (A357.) In fact, the associate apparently did exactly what the comment told her to do—she had the document scanned. It is also unclear when exactly Cameron left the firm and how long her replacement had been working there by the time the notice of appeal had to be filed. In any case, we believe that a reasonably competent attorney would have exercised more supervision and control over a purportedly new and inexperienced subordinate. Rohn, at the very least, should have done more than make a number of vague annotations on the district court's ruling and should have anticipated that a relatively new employee would need more direction. We also are troubled by the fact that Rohn essentially and rather conveniently sought to shift at least some of the blame from herself to another person (who actually was no longer with the firm by the time of the Rule 4(a)(5) hearing, did not submit any declaration in support of the motion, and did not appear at the hearing itself).

Rohn likewise acknowledged that she personally failed to create the requisite "computer task" as per her firm's usual

31

practices. She thereby clearly carried at least partial responsibility for the breakdown in her firm's internal procedures. In fact, the failure to create the critical computer task meant that this system was never really triggered in the first place.

We add that the firm's own procedures had some serious deficiencies of their own. As noted above, the proper completion of a computer task was evidently necessary to trigger this computer tracking system in the first place. Turning to the more significant matter of the ECF system, we do acknowledge that attorneys, especially well-established lawyers like Rohn, could have difficulties adjusting to this mechanism of electronic case filing (as well as other computer procedures). However, it is also undisputed that Rohn herself had previously registered as an ECF user sometime before the beginning of 2010. Rohn (or at least someone in her office using her ECF account) has actually filed numerous documents in this heavily litigated case via the ECF system since September 2007. If a notice of appeal had actually been filed (as Rohn evidently believed it had been), a notice of such a filing would have immediately been sent via e-mail to any and all attorneys who had previously entered an appearance in the District Court proceeding. Accordingly, Rohn should have known that no notice of appeal had been filed because neither Rohn nor any other attorneys from her firm who had entered an appearance in this case ever received any notice of such a filing. Having not received such a notice, any reasonably competent attorney would have looked into whether a notice of appeal had been

32

properly filed—especially where such a critical task had been assigned to a relatively new subordinate.

At the Rule 4(a)(5) hearing, Rohn actually acknowledged that "all the ECF filings in my office, even directed to me internally through technology, go to the attorney who is actually in charge of monitoring those," and that Rohn herself "wouldn't have gotten an ECF back." (A440.) At the very least, we believe that such an arrangement was highly problematic. In particular, a reasonably competent attorney who did not personally receive or otherwise look at ECF notices would have to set up some sort of additional method of keeping track of filings, especially those filings submitted under her own ECF account as well as critical filings like a notice of appeal. Such an attorney would at least attempt to make sure that a notice of appeal had been filed within the applicable 30-day period by, for example, simply asking the subordinate whether—and when—she had filed this critical document.

In fact, we previously turned to the ECF filing system as a basis for rejecting a claim of excusable neglect. In Nara v. Frank, 488 F.3d 187 (3d Cir. 2007), we concluded that "the Commonwealth's overall negligence in handling the [28 U.S.C. § 2254 habeas] matter precludes us from finding 'excusable neglect'" under Federal Rule of Civil Procedure 60(b) with respect to the Commonwealth's failure to file timely objections to the magistrate judge's report and recommendation, id. at 194. We noted, among other things, that: "[A]ttorneys practicing in the Western District of Pennsylvania were under a standing order to register with the

33

Case Management/Electronic Case Files (CM/ECF) system by July 1, 2005. If the Commonwealth's attorneys had complied with that order, they would have received immediate electronic notification that the Magistrate Judge had issued the R & R and could have accessed it by hyper-link." Id. (footnotes omitted). In turn, "[t]he Commonwealth's Attorneys based in Harrisburg were required to register in the Middle District of Pennsylvania in 2003." Id. at 194 n.12 (citation omitted). Because of the lack of excusable neglect, we proceeded to apply a plain error standard of review. Id. at 193-97.

It is well established that a busy caseload generally does not constitute a basis for a finding of excusable neglect. See, e.g., Pedereaux v. Doe, 767 F.2d 50, 52 (3d Cir. 1985) ("That counsel spent much of the latter period preparing for the trial of other matters does not excuse the failure to attend to the insubstantial task of filing a notice of appeal."). Ragguette accordingly denies ever advancing such a theory in the first place. But he also continues to highlight his counsel's busy schedule during the relevant time period. For example, Rohn raised the issue of her own caseload at the hearing, purportedly in order to provide an explanation as to why she would not necessarily have seen a notice of appeal before its filing and why she would not have known that no such notice had been prepared and filed. We believe that Ragguette's attorney thereby attempted to draw too fine of a distinction. Simply put, the busy caseload was essentially offered as an "excuse" for "the failure to attend to the insubstantial task of filing a notice of appeal." Id. We also believe that a reasonably competent attorney would have

34

better managed her own caseload and would have done more to make sure that the critical task of properly filing a notice of appeal was completed despite how busy she may have been at the time.

We likewise determine that Rohn clearly failed to exercise reasonable diligence in uncovering the fact that no notice of appeal had been filed and then bringing this mistake to the attention of the opposing party and the District Court. This Court previously rejected the "contention that Rule 4(a)(5) provides an absolute 30 day grace period" and held that "'excusable neglect' must be shown up to the actual time the motion to extend is filed." Id. at 51. "It simply is not overly burdensome to require a putative appellant, who has already missed the 30 day . . . mandatory appeal date of Rule 4(a)(1) because of 'excusable neglect,' to file immediately a Rule 4(a)(5) motion to extend when the excuse no longer exists." Id. at 52. In this case, a reasonably diligent attorney certainly could have—and should have—discovered the fact that no notice of appeal had been filed (or at least taken steps to investigate the matter) when: (1) Premier filed its original fee motion on January 13, 2010; (2) Ragguette's opposition to this fee motion was filed (via the ECF system under Rohn's own account) on January 28, 2010; (3) the District Court entered an order on February 8, 2010 scheduling a hearing on the fee motion for February 23, 2010; (4) on February 24, 2010, the District Court rescheduled the fee hearing for March 1, 2010; (5) no ECF notice was ever received indicating the filing of a notice of appeal; (6) no ECF notices were ever received with respect to a number of documents sent out by the District Court's Clerk (a receipt for payment

35

of the requisite filing fee for an appeal) as well as the Third Circuit's Clerk (the initial case opening letter and the assignment of the case caption) immediately after the filing of a notice of appeal; and (7) similarly, no ECF notices (or hard copies of the documents themselves) were ever received indicating that the parties filed various documents due shortly after the commencement of an appeal (i.e., entry of appearance, disclosure statement, civil appeal information statement, concise summary of the case, and transcript purchase order).[4] Yet Rohn purportedly did not discover that

---

[4] In passing, Ragguette contends that there was no evidence in the record to support Premier's representations that Rohn should have received ECF notices for various filings and that, in fact, the record actually established the contrary. We, however, must reject his assertions given the well-established nature of the procedures at issue here. For instance, we observe that the docket sheet for Ragguette's successful appeal from the District Court's initial denial of his Rule 4(a)(5) motion indicated that the following documents were filed (and served) shortly after the May 20, 2010 filing of his notice of appeal via Rohn's ECF account: (1) on May 21, 2010, the receipt for payment of the appellate filing fee; (2) on May 26, 2010, the initial case opening letter, the assignment of the case caption, and an order advising the parties of the Court's practice of holding Virgin Islands sittings twice a year as well as tentatively listing this case for May 2011; (3) on May 28, 2010, an entry of appearance from Premier's counsel and Premier's disclosure statement; (4) on June 11, 2010, a follow-up letter from the Third Circuit Clerk's Office to Rohn requesting the submission of an entry

no notice of appeal had been filed until her preparation for the March 1, 2010 fee hearing—approximately a month after the deadline for filing a notice of appeal and approximately two months after the District Court's summary judgment order. Nevertheless, she still did not even mention the mistake or the possibility of an appeal at the hearing conducted on March 1, 2010. Even though she claimed that that she did do so because she wanted to obtain verification, we must reject such an excuse given her prior—and extensive—lack of due diligence. We also note that a reasonably competent attorney—having just discovered that a notice of appeal had not been filed almost a month after the deadline had already expired and immediately before a previously scheduled hearing—would have exercised more diligence in obtaining verification prior to the hearing and would have then brought this critical matter to the immediate attention of opposing counsel and the judge.

We thereby determine that the District Court erred in its assessment of the "reason for the delay" factor. Contrary

---

of appearance form, a civil case information statement, a concise summary of the case, and a transcript purchase order on or before June 25, 2010; and (5) on June 25, 2010, an entry of appearance from Rohn as well as a civil case information statement, concise summary of the case, disclosure statement, and transcript purchase order. Again, we emphasize that the fact that the ECF filings purportedly went to Rohn's new motions attorney—and were not otherwise received or monitored by Rohn herself—weighs against any finding of excusable neglect.

to the District Court's characterization, this factor strongly weighs against any finding of excusable neglect.  We, however, must still address the District Court's assessment of the remaining Pioneer factors.  "Under Pioneer, a court must take into account all relevant circumstances surrounding a party's failure to file, and failing to disprove 'reasonable control' is not necessarily fatal to a petitioner's request for relief.  To state it differently, the 'control' factor does not necessarily trump all the other relevant factors."  George Harms Constr. Co. v. Chao, 371 F.3d 156, 164 (3d Cir. 2004).  Therefore, while prejudice to the opposing party, disruption of efficient judicial administration, and bad faith are frequently absent, the mere fact that "those factors may nearly always favor" the moving party does not mean that they can be ignored.  Id.

We nevertheless must conclude that the other Pioneer factors, at best, provide only minimal support for the District Court's "excusable neglect" finding.  Accordingly, they are clearly insufficient to outweigh the "reason for the delay" factor.

It is well established that, as Ragguette points out, "a finding of prejudice should be a conclusion based on facts in evidence."  In re O'Brien Envt'l Energy, Inc., 188 F.3d 116, 127 (3d Cir. 1999).  In other words, prejudice does not consist of "an imagined or hypothetical harm," and, on the contrary, prejudice generally occurs where, for instance, the opposing party has lost evidence or placed substantial reliance on the judgment or there is an increased potential for fraud or collusion.  Id.  The District Court appropriately noted that

38

Premier would have faced the prospect of a trial even if its opponent had filed a notice of appeal within the applicable 30-day period. "Nor is there evidence that defendant has incurred any significant costs since the entry of judgment, or that it will incur significant costs connected to this motion." Ragguette, 2011 WL 2359920, at *1. The District Court, at the very least, ultimately accorded too much weight to this particular factor in the current circumstances. In particular, Premier points out that it was certain there would be no appeal once the 30-day period to file a notice of appeal had expired and no notice of appeal (or Rule 4(a)(5) motion) had been either filed or served within this 30-day period. Viewed in isolation, this contention overlooks a number of well-established mechanisms available to pursue an appeal even in absence of an otherwise timely notice of appeal, including Rule 4(a)(5) itself. We, however, are not confronted here with the more typical situation of an appellant who, while still managing to serve the notice of appeal on the opposing party in a timely fashion, failed to file a notice of appeal with the district court within the generally applicable 30-day period due to some sort of unfortunate oversight. As we have already discussed in some detail, Rohn never indicated to opposing counsel or the District Court the possibility of an appeal until the Rule 4(a)(5) motion was filed on March 5, 2010. In fact, a fee hearing was actually held before the District Court only days before the expiration of the 60-day period established by Rule 4(a)(5), and, yet again, not a word was said about any possible appeal. Given these circumstances, Premier could have been led to believe that its adversary did not intend to appeal from the District Court's order granting its summary judgment motion and that the only

39

remaining issue in the litigation was the subsidiary question of fees and costs.

We reach the same basic conclusion with respect to the "length of the delay and its potential impact on the judicial proceedings" factor. The length of the delay must be examined in "absolute terms" or in an "absolute sense," meaning that the extent of the delay should be considered in isolation. O'Brien, 188 F.3d at 129-30; see also, e.g., Orthopedic Bone Screw, 246 F.3d at 325. The District Court reasonably observed that "[t]he delay, measured at the time Ragguette filed his motion, was twenty-nine days, but within the time for filing the Rule 4 motion." Ragguette, 2011 WL 2359920, at *1. While it appropriately found that such a delay "was not inordinate," id., this finding must still be weighed against the other Pioneer factors. We also cannot overlook the fact that Ragguette filed his motion on Friday, March 5, 2010—the 59th day of the 60-day period. He only had one more business day—Monday, March 8, 2010—left to seek relief under Rule 4(a)(5). In other words, this is not a case where a party filed the Rule 4(a)(5) motion within the original 30-day period for filing a notice of appeal or even just a few days after this initial period had expired.

Finally, we agree with the District Court that neither Ragguette nor Rohn appeared to act in bad faith, at least in the specific sense of engaging in outright misconduct or inequitable behavior. Nevertheless, we still cannot overlook the manifest lack of diligence on the part of Ragguette's attorney and, in particular, the multiple opportunities she had to discover the failure to file a notice of appeal and then to

40

attempt to remedy such a clear and serious mistake. Most significantly, even though Rohn finally discovered what happened when preparing for the March 1, 2010 fee hearing, she did not even mention this discovery or a possible appeal at the hearing itself. While her intent to obtain verification was perhaps understandable, such a justification does not really carry much weight here, especially given the clear deficiencies with respect to how Rohn and her firm handled the filing of a notice of appeal, her lack of due diligence, and her status as an experienced litigator. Even if there was "no reason to believe that [Rohn] ever acted in bad faith," we cannot conclude that she was "so careful or vigilant as to overcome the weight" of the "reason for the delay" factor. In re Am. Classic Voyages Co., 405 F.3d 127, 134 (3d Cir. 2005) (determining that bankruptcy court did not abuse discretion by finding that failure to file claim by bar date did not qualify as excusable neglect and also specifically stating that party's care and vigilance were not sufficient to overcome weight of other factors—especially "second" factor).

In the end, we must conclude that the District Court abused its discretion. While we acknowledge the deferential nature of our review, it is clear that the "reason for the delay" factor strongly weighs against any finding of excusable neglect. It is also clear that the remaining factors, at best, provide only minimal support for such a finding and thereby cannot overcome the weight of the "reason for the delay"

41

factor.[5]  In other words, the Court is confronted in this case with more than the simple and understandable "failure to proofread a caption" at issue in Consolidated.  827 F.2d at 921.  In fact, counsel—unlike her counterpart in Consolidated—never even managed to draft a notice of appeal within the applicable 30-day period, and, accordingly, there was no "timely service of the Notice of Appeal upon opposing counsel."  Id. at 920.  We likewise are not dealing here with anything comparable to Pioneer's "unusual form of notice."  Pioneer, 507 U.S. at 399.

More broadly, we note that a ruling in favor of Ragguette in the current circumstances could be read as condoning and even rewarding otherwise avoidable mistakes—and even outright incompetence—on the part of even experienced attorneys.  Far from deterring such mistakes, such a signal could lead to yet more claims of excusable neglect premised on attorney incompetence in connection with the critical—yet relatively simple—step of filing a notice of appeal within the applicable time period for doing so.

IV.

---

[5] Given this assessment of the Pioneer factors, we need not—and do not—decide whether a prior panel of our Court was correct to suggest in dicta that the "danger of prejudice" factor constitutes "the most important [factor] of all."  Diet Drugs, 401 F.3d at 154.

For the foregoing reasons, we determine that the District Court improvidently granted Ragguette's motion for an extension of time to file a notice of appeal under Federal Rule of Appellate Procedure 4(a)(5).  We accordingly will dismiss Ragguette's appeal for lack of appellate jurisdiction.