**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

Nos. 15-1514 and 15-1568

_____

In re:  PRINCETON OFFICE PARK, L.P.,

Appellant in 15-1568

PLYMOUTH PARK TAX SERVICES,

Appellant in 15-1514

_____

On Appeal from the United States District Court and
Bankruptcy Court for the District of New Jersey
(District Court No. 3-14-cv-02125; Bankruptcy Court No. 08-27149)
District Court Judge:  Honorable Michael A. Shipp
Bankruptcy Court Judge:  Honorable Michael B. Kaplan

_____

Submitted under Third Circuit LAR 34.1(a)
on November 9, 2015

Before:  CHAGARES, SHWARTZ and RENDELL, Circuit Judges.

(Opinion Filed:  May 5, 2016)

_____

O P I N I O N[*]

_____

**RENDELL**, Circuit Judge:

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

Princeton Office Park, L.P. ("Princeton") is a New Jersey limited partnership that failed to pay property taxes on its primary asset, a vacant office park in Lawrence Township, New Jersey, which resulted in the Township's placing a tax lien on the property. Plymouth Park Tax Services LLC ("Plymouth"), a company formed to invest in tax liens, bought that tax lien at an auction conducted by the Township and received a tax sale certificate on Princeton's property. After Princeton filed for bankruptcy, Plymouth filed a proof of claim that included not just the tax debt that Princeton owed on the property but also a premium that Plymouth had paid to the Township to acquire the tax sale certificate. The issue before us is whether the Bankruptcy Court and the District Court properly disallowed this claim. We will affirm.

## I.    BACKGROUND

### A.    The New Jersey Tax Sale Law

The New Jersey Legislature has adopted a comprehensive scheme governing the sale of and investment in tax sale certificates for unpaid property taxes. *See* N.J. Stat. Ann. § 54:5-1 *et seq.* When a property owner in New Jersey fails to pay property taxes, the municipality places a tax lien on the property. The tax lien is then put up for sale at an auction held by the municipality in which the winning bidder receives a tax sale certificate and the right to foreclose on the property two years after the date it acquired the certificate. *Id.* § 54:5-86(a). The bidding starts at an 18% interest rate—the interest rate that would be paid by the property owner—and bidders compete for the lien by bidding down the interest rate. *Id.* § 54:5-32. If the bidding reaches a 0% interest rate, the bidders then bid up on a premium to be paid to the municipality. *Id.* In that case, the

2

winning bidder pays to the municipality the premium plus the tax debt on the property. *Id.* The holder of the tax sale certificate can get its premium back, but only if the property owner redeems the certificate within five years. *Id.* § 54:5-33. Significantly, if the holder "knowingly charges or exacts any [excessive] fee or charge in connection with the redemption of [the] tax sale certificate," it must forfeit the certificate to the property owner. *Id.* § 54:5-63.1.

### B. Procedural Posture

Princeton failed to pay property taxes on its office park in Lawrence Township. As a result, the Township placed a tax lien on the property. On December 19, 2005, the Township put the lien up for sale at its tax lien auction. Plymouth successfully bid a 0% interest rate and a premium of $600,100 to acquire a tax sale certificate on the property. Plymouth also paid Princeton's unpaid municipal tax bill of $204,396.79.

On December 18, 2007, Plymouth filed a foreclosure action against Princeton on the property. One day before Plymouth could file a final judgment to foreclose on the property, Princeton filed for relief under Chapter 11 of the U.S. Bankruptcy Code.

On October 29, 2008, Plymouth filed a Proof of Claim ("First Proof of Claim") against Princeton in the bankruptcy proceeding for $1,775,791.33, which included the $600,100 premium that it had paid to Lawrence Township to acquire the tax sale certificate. On July 15, 2009, the Bankruptcy Court issued an order requiring that Plymouth amend its First Proof of Claim to remove the $600,100 premium. On January 28, 2010, Plymouth filed an amended proof of claim, removing the premium. But Princeton still objected to the allowance of this claim, arguing it should be disallowed

3

because Plymouth had included the premium amount in its First Proof of Claim and had therefore "knowingly charge[d] or exact[ed]" an excessive fee "in connection with the redemption of [the] tax sale certificate," in violation of N.J. Stat. Ann. § 54:5-63.1.

After a bench trial, the Bankruptcy Court held that Plymouth had indeed violated § 54:5-63.1 and that its claim was disallowed and the underlying lien was void pursuant to 11 U.S.C. § 506(d) of the U.S. Bankruptcy Code. The District Court affirmed.

## II. ANALYSIS[1]

### A. Preemption of N.J. Stat. Ann. § 54:5-63.1

Plymouth argues that the U.S. Bankruptcy Code preempts N.J. Stat. Ann. § 54:5-63.1. That argument fails. As part of the claims allowance process, the U.S. Bankruptcy Code permits a creditor to file a claim against a debtor, at which point the debtor can object to that claim by arguing that it is unenforceable under applicable state law. *See* 11 U.S.C. § 502(b)(1) (stating that a claim shall not be allowed "to the extent that . . . such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law"). In fact, courts often look to state law to determine the validity of a proof of claim. *See Travelers Cas. & Sur. Co. of Am. v. Pacific Gas & Elec. Co.*, 549 U.S. 443, 450–51 (2007) ("[C]reditors' entitlements in bankruptcy arise in the first

---

[1] The Bankruptcy Court had jurisdiction under 28 U.S.C. §§ 1334(a) and 157(a). The District Court had jurisdiction under 28 U.S.C. § 158(a). We have jurisdiction under 28 U.S.C. §§ 1291 and 158(d). On appeal, Plymouth does not contest the Bankruptcy Court's factual findings. Rather, it challenges only the Bankruptcy and District Courts' conclusions of law. Therefore, our review is de novo. *See In Re Siciliano*, 13 F.3d 748, 750 (3d Cir. 1994) ("We apply, like the district court, a clearly erroneous standard to the bankruptcy court's factual findings and a plenary standard to legal issues." (quoting *Meridian Bank v. Alten*, 958 F.2d 1226, 1229 (3d Cir. 1992)).

instance from the underlying substantive law creating the debtors' obligation, subject to any qualifying or contrary provisions of the Bankruptcy Code. That principle requires bankruptcy courts to consult state law in determining the validity of most claims." (internal citation omitted)); *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 245 n.66 (3d Cir. 2005) ("A claim against the bankruptcy estate . . . will not be allowed in a bankruptcy proceeding if the same claim would not be enforceable against the debtor outside of bankruptcy." (citation and internal quotation marks omitted)). That is what happened here. Plymouth filed its First Proof of Claim against Princeton but unwisely chose to include the premium that it had paid to the Township.[2] Princeton objected, asserting that the claim violated § 54:5-63.1. Thus, the District Court properly concluded that the U.S. Bankruptcy Code did not preempt § 54:5-63.1 and looked to that provision to determine if Plymouth's claim was enforceable.

## B.    Plymouth's Violation of N.J. Stat. Ann. § 54:5-63.1

Plymouth next argues that, even if § 54:5-63.1 was not preempted, it did not violate that provision by including the premium in its First Proof of Claim. We disagree.

As mentioned earlier, under § 54:5-63.1, "[a]ny holder of a tax sale certificate . . . who knowingly charges or exacts any [excessive] fee or charge in connection with the redemption of any tax sale certificate . . . shall forfeit such tax sale certificate."

Plymouth claims that the filing of its First Proof of Claim was not an attempt to "charge[] or exact[]" a fee from Princeton. *Id.* As the District Court highlighted, however,

---

[2] The Bankruptcy Court found as fact—and so it is undisputed—that Plymouth had a policy of including these premiums in proofs of claim that it filed even though it knew that the debtor property owner was never obligated to pay this money. (App. 405-07.)

5

a proof of claim is a sworn, written statement by a creditor setting forth the total amount of money that it is seeking from the debtor. Fed. R. Bankr. P. 3001. Here, Plymouth included the premium of $600,100 in its First Proof of Claim, meaning that it included this amount in the total amount of money that it requested in order to release the lien that it held on the property. The District Court thus correctly held that this was an attempt by Plymouth to "charge[] or exact[]" a fee from Princeton. N.J. Stat. Ann. § 54:5-63.1.

Plymouth next argues that the filing of its First Proof of Claim did not constitute a demand made "in connection with [Princeton's] redemption of [the] tax sale certificate." *Id.* Plymouth contends that, at the time that it filed its First Proof of Claim against Princeton, under New Jersey law, Princeton could redeem a tax sale certificate *only* through the tax collector's office—and not through filing for bankruptcy. But Plymouth has not pointed to anything in New Jersey's Tax Sale Law at that time stating that a property owner could only initiate a redemption through the tax collector's office. In addition, at that time, bankruptcy courts in New Jersey approved the redemption of tax sale certificates through bankruptcy, *see, e.g.*, *In re Sea Garden Motel & Apartments*, 195 B.R. 294, 299 (Bankr. D.N.J. 1996), a practice that the New Jersey legislature has since codified as an acceptable way for a redemption to occur, N.J. Stat. Ann. § 54:5-54.1 ("All redemptions shall be made through the tax collector's office, unless authorized by court order *or pursuant to federal bankruptcy law*." (emphasis added)); *see also Varsolona v. Breen Capital Servs. Corp.*, 853 A.2d 865, 876 (N.J. 2004) ("[S]ubsequent legislation may be used by a court as an extrinsic aid when seeking to discern earlier legislative intent."). Accordingly, the District Court did not err in concluding that "a 'redemption,' is

6

effectuated, for purposes of N.J.S.A. 54:5-63.1, where a debtor seeks relief in bankruptcy under Chapter 11 from an action by a lienholder." (App. 15.)[3]

## III. CONCLUSION

For the foregoing reasons, we will affirm the decision of the District Court.

---

[3] Princeton also cross-appealed, challenging the District Court's order permitting Plymouth to submit an untimely brief in support of its appeal of the Bankruptcy Court's order. While Princeton is correct that the District Court should have set forth the reasons as to why it found that Plymouth engaged in excusable neglect, *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 246 F.3d 315, 320–21 (3d Cir. 2001), the record shows that it did not abuse its discretion in allowing the filing of a late brief, *see In re Cendant Corp. Prides Litig.*, 233 F.3d 188, 192 (3d Cir. 2000).

A court may extend a missed deadline if the party seeking the extension shows that it was tardy due to "excusable neglect." Fed. R. Civ. P. 6(b)(1)(B); Fed. R. Bankr. P. 9006(b)(1). We have considered the factors set forth in *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 395 (1993), and *Ragguette v. Premier Wines & Spirits*, 691 F.3d 315, 324–25 (3d Cir. 2012), and conclude that while Plymouth did not provide a sufficient reason for its delay and the errors appear to have been due to an oversight, the resulting delay was not excessive, no prejudice resulted, and counsel acted in good faith in notifying the District Court of the oversight. While the District Court could have declined to permit the brief, it acted within its discretion to accept it and, in fact, appropriately exercised its discretion, as the record is devoid of any reason to impose the extreme sanction of barring the brief, which would have resulted in the dismissal of the appeal. By permitting the untimely brief, the District Court ruled based on the merits, rather than on a technicality, which is consistent with our exhortation that cases should generally be resolved on their merits. *See Hritz v. Woma Corp.*, 732 F.2d 1178, 1181 (3d Cir. 1984) ("[W]e have repeatedly stated our preference that cases be disposed of on the merits whenever practicable.").