PRECEDENTIAL
UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-2723
_____


JEANNE ZALOGA; EDWARD ZALOGA, D.O., C.P.A.;
CORRECTIONAL CARE INC

v.

BOROUGH OF MOOSIC; MOOSIC BOROUGH
COUNCIL; MOOSIC BOROUGH PLANNING
COMMISSION; MOOSIC BOROUGH ZONING BOARD
OF ADJUSTMENTS; JOSEPH MERCATILI, Individually
and in his official capacities as President of Moosic Borough
Council; JOSEPH DENTE, Individually and in his official
capacity as Vice President of Moosic Borough Council and
member of the Moosic Borough Planning Commission;
THOMAS HARRISON; Individually and in his official
capacity as Moosic Borough Manager;  BRYAN FAUVER,
Individually and in his official capacity as Chairman of
Moosic Borough Planning Commission; JAMES DURKIN,
Individually and in his official capacity as Moosic Borough
Zoning and Enforcement Officer; JOHN J. BRAZIL;
WILLARD HUGHES

Joseph Mercatili,
Appellant

_____
On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 3-10-cv-02604)
District Judge: Hon. Matthew W. Brann
_____


Argued
July 12, 2016

Before: SMITH[*], JORDAN, and RENDELL, *Circuit
Judges*.

(Filed: October 24, 2016)
_____

Joshua M. Autry  [ARGUED]
Laverty Faherty Patterson
225 Market Street – Ste. 304
P.O. Box 1245
Harrisburg, PA   17108
        *Counsel for Appellants*

Bruce L. Coyer
Joseph T. Healey   [ARGUED]
O'Malley Harris Durkin & Perry
345 Wyoming Avenue
Scranton, PA   18503
        *Counsel for Appellees*

_____

[*] Honorable D. Brooks Smith, United States Circuit Judge for the Third Circuit, assumed Chief Judge status on October 1, 2016

_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

This case is an appeal from an interlocutory decision denying defendant Joseph Mercatili's claim to qualified immunity. Dr. Edward Zaloga, who had been engaged in an ongoing feud with local government officials, publicly opposed Mercatili's reelection as the President of the Moosic, Pennsylvania Borough Council. Mercatili allegedly retaliated against Zaloga by seeking to damage his business interests.

Zaloga brought this § 1983 suit against several county entities and individuals, alleging various constitutional violations, including Mercatili's retaliation. The United States District Court for the Middle District of Pennsylvania granted the defendants' motion for summary judgment with respect to all defendants except Mercatili. The Court decided that Mercatili's claim to qualified immunity depended on disputed facts and would have to be resolved by a jury.

Mercatili now appeals, arguing that he is entitled to qualified immunity because his conduct, even if Zaloga's allegations are true, did not violate clearly established law. We agree and will reverse and remand for the District Court to grant summary judgment in Mercatili's favor.

# I. BACKGROUND

## A. Factual Background[1]

The Plaintiffs in this case are Dr. Edward Zaloga and Correctional Care, Inc., a medical company he owns and "that provides contracted services to correctional facilities."[2] (*Zaloga v. Borough of Moosic*, M.D. Pa. CA No. 10-2604-MWB Docket Item ("D.I.") 156, at 2 ¶ 3.) Zaloga resides in the Borough of Moosic in Lackawanna County, Pennsylvania. At all relevant times, Lackawanna County, through the oversight of the Lackawanna County Prison Board, has contracted with Correctional Care to provide medical services to the Lackawanna County Prison.

Although the Plaintiffs initially sued the Borough of Moosic, the Borough Council, the Borough's planning commission and zoning board, and various Borough officers, the only remaining defendant is Mercatili. The legal friction between Zaloga and the Borough originated in disputes between the Zaloga family and a tire company that occupied a facility immediately adjacent to the Zalogas' home. Frustrated by the Borough's handling of those disputes,

---

[1] For purposes of summary judgment, we recount the facts as alleged by the plaintiffs, accepting them as true and drawing all factual inferences in their favor. *Scheetz v. The Morning Call, Inc.*, 946 F.2d 202, 205 (3d Cir. 1991).

[2] Zaloga is the sole shareholder of Correctional Care. Although Zaloga's wife, Jeanne, continues to be listed as a plaintiff in the caption of this case, the District Court's June 16, 2015 order dismissed her as a party and no one has contested that decision.

Zaloga launched political attacks on Mercatili and John Segilia – the then-mayor of the Borough (now deceased) – publically opposing their nominations for reelection to public office.

About a month later, the Lackawanna County Solicitor notified Zaloga that the County intended not to continue its contractual arrangement with Correctional Care upon expiration of the contract's term. The Solicitor also said, however, that Correctional Care could compete with other health care providers in bidding for a new contract. It indeed did so, but Zaloga's attorney informed him that, according to conversations with a Lackawanna County Prison Board member, Segilia and Mercatili were attempting "to block [Correctional Care's] contract renewal." (A169a ¶ 29.) Shortly thereafter, a Prison Board member told Zaloga that "both Segilia and [Mercatili] were upset with [Zaloga's] persistent opposition to their decisions regarding the … [t]ire facility and [Zaloga's] challenge to their nominating petitions, and that Segilia and [Mercatili] wanted the Prison Board member to oppose [Correctional Care's] upcoming contract renewal." (D.I. 156, at 32-33 ¶¶ 102-03.) Later, a "second Prison Board member informed [Zaloga] that Segilia and [Mercatili] contacted him and demanded that he also vote against the renewal of [Correctional Care's] contract … in exchange for their support for his [*i.e.*, the Board member's] political campaign." (D.I. 156, at 33 ¶ 104.) Sometime between April and November 2009, Segilia and Mercatili also approached John Szymanski – the Lackawanna County Sheriff and a Prison Board member – and told him that "they would support [his] campaign for re-election *only if* [he] would oppose Dr. Zaloga's company's contract renewal." (A179a ¶ 5 (emphasis in original).)

5

The record contains several additional instances of Segilia and Mercatili purportedly applying political pressure on Prison Board members. The District Attorney for Lackawanna County, also a Prison Board member, averred that, when discussing Correctional Care's contract renewal with Segilia in 2009, Segila "indicated that he [had] a problem with Dr. Zaloga ... because of his ongoing legal battle in Moosic and because [Zaloga] '...attempted to have [Segilia and Mercatili] thrown off the ballot.'" (A175a ¶ 6.) According to the District Attorney, "just prior to Correctional Care's medical contract renewal," another Prison Board member told him that Segilia and Mercatili were angry at him for "considering a vote in favor of renewing Correctional Care's contract with the Lackawanna County Prison." (A175a ¶ 7.) The Board member went on to express his personal concern that Segilia and Mercatili "would either not support him or even work against him in his re-election bid." (A175a ¶ 7.) The District Attorney himself did not speak with Mercatili until after the County had already renewed its contract with Correctional Care.

Ultimately, the County unanimously voted to award Correctional Care a three-year contract renewal, and the contract was renewed again in 2012.

### B. Procedural Background

The Plaintiffs filed their first complaint in 2010, and subsequently amended it three times. Count I of the Third Amended Complaint alleges that the Defendants retaliated in response to Zaloga's exercise of his First Amendment rights. Count II says that the Defendants violated the Plaintiffs'

6

substantive due process and Fourteenth Amendment rights by interfering with the Plaintiffs' reputational, constitutional, and property rights. Finally, Counts III and IV allege that the Defendants conspired against the Plaintiffs in violation of both 42 U.S.C. § 1983 and state common law.

After completion of discovery, the Defendants moved for summary judgment. The District Court granted summary judgment on all counts against all Defendants, except for Counts I, III, and IV against Mercatili. As to Mercatili, the Court concluded that his assertion of qualified immunity hinged upon fact questions that would need to be settled by a jury.

Mercatili appealed.

## IV. DISCUSSION[3]

Qualified immunity shields government actors from suit "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In *Saucier v. Katz*, the Supreme Court divided the analysis of qualified immunity into two parts: First, a court considering qualified immunity must ask whether the alleged facts, taken in the light most favorable to the injured party, "show [that] the [government official]'s conduct violated a constitutional right"; second, the court

---

[3] The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1343. "[A] district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291 … ." *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985). The qualified immunity question implicated in this case − namely, whether the law allegedly violated was "clearly established" at the time of the defendant's actions − is the type of legal issue immediately appealable as a final decision. *In re Montgomery Cty.*, 215 F.3d 367, 373-74 (3d Cir. 2000). Thus, we have appellate jurisdiction to consider that question at this stage of the proceedings. Our review of a district court's grant or denial of summary judgment is plenary. *Heffner v. Murphy*, 745 F.3d 56, 65 (3d Cir. 2014). "To prevail on a motion for summary judgment, the moving party must demonstrate 'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Interstate Outdoor Adver., L.P. v. Zoning Bd. of Twp. of Mount Laurel*, 706 F.3d 527, 530 (3d Cir. 2013) (quoting FED R. CIV. P. 56(a)).

must ask whether the right was clearly established "in light of the specific context of the case, [and] not as a broad general proposition." 533 U.S. 194, 201 (2001). Notwithstanding the sequence of the *Saucier* questions, federal courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Summary judgment based on qualified immunity should be granted when "the law did not put the officer on notice that his conduct would be clearly unlawful." *Saucier*, 533 U.S. at 202.

Here, the District Court erred in its consideration of the second prong of the qualified immunity analysis. We therefore do not need to decide whether Mercatili's actions could have violated Zaloga's constitutional rights, and we decline to do so. Discussing the constitutionality of Mercatili's actions would require us to grapple with the tension between his First Amendment right to speak and Zaloga's right to be free of government retaliation. Because the law does not clearly address how to harmonize those competing interests, the second *Saucier* prong is not met and any analysis addressing the first prong would "be an essentially academic exercise." *Pearson*, 555 U.S. at 237. The doctrine of constitutional avoidance counsels against unnecessarily wading into such muddy terrain. *Cf. id.* at 241 (justifying resolving a dispute solely on the basis of the second prong due to "older, wiser judicial counsel not to pass on questions of constitutionality ... unless such adjudication is unavoidable[]" (internal quotation marks omitted)). We thus move directly to an explanation of our conclusion with

respect to the second prong of the qualified immunity analysis.

## A.    The "Clearly Established" Standard

The standard for qualified immunity is tilted in favor of shielding government actors and "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (internal quotation marks omitted).  To defeat qualified immunity, the right purportedly violated must be so clearly established that

> *every reasonable official* would have understood that what he is doing violates that right.  In other words, existing precedent must have placed the statutory or constitutional question *beyond debate*.  This "clearly established" standard … ensur[es] that officials can reasonably … anticipate when their conduct may give rise to liability for damages.

*Reichle v. Howards*, __ U.S. __, 132 S. Ct. 2088, 2093 (2012) (emphasis added) (internal quotation marks, citations, and brackets omitted); *see also Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (explaining that, for the contours of a right to be clearly established, "[w]e do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate").

Given that exacting standard, it is not surprising that some degree of specificity in the law is required before a right is said to be "clearly established."  The Supreme Court has repeatedly stressed that, for purposes of determining whether

a right is so well settled as to defeat qualified immunity, it "must be established not as a broad general proposition, but in a particularized sense so that the contours of the right are clear to a reasonable official[.]" *Reichle*, 132 S. Ct. at 2094 (internal quotation marks and citations omitted). Thus, in *Reichle v. Howards*, the Supreme Court rejected the plaintiff's argument that a right was clearly established merely because that Court's precedent "settled the rule that, as a general matter, the First Amendment prohibits government officials from subjecting an individual to retaliatory actions for his speech." *Id*. at 2093-94 (internal quotation marks omitted). The Court explained that, in the fact scenario it faced, "the right in question *is not the general right to be free from retaliation for one's speech*, but the more specific right to be free from a retaliatory arrest that is otherwise supported by probable cause." *Id.* at 2094 (emphasis added). We thus understand that the right should be framed in terms specific enough to put "every reasonable official" on notice of it, and the more specific the precedent, the more likely it is that a right will meet that threshold.

Especially in light of *Reichle*, it is not sufficient to conclude, as the District Court did in this case, that the second *Saucier* prong is satisfied because there is a well-known "right against government retaliation for exercising one[']s right to [free] speech … ." (A34a.) That put the question of whether the "clearly established" standard had been met at much too high a level of abstraction. Instead, we must attend to context; we need to "consider the state of the existing law at the time of the alleged violation and the circumstances confronting [Mercatili] to determine whether a reasonable state actor could have believed his conduct was lawful."

11

*Kelly v. Borough of Carlisle*, 622 F.3d 248, 253 (3d Cir. 2010).

### B.    Applying Precedent

Our opinion in *McLaughlin v. Watson*, 271 F.3d 566 (3d Cir. 2001) – which is the most analogous precedent with respect to Mercatili's alleged actions – effectively precludes Zaloga and Correctional Care from arguing that Mercatili's actions violated clearly established law.    The plaintiffs in *McLaughlin* were agents of the Pennsylvania Attorney General's office who alleged (among other things) that the United States Attorney for the Eastern District of Pennsylvania had "acted administratively to influence the Pennsylvania Attorney General to take adverse employment-related action against them." *Id*. at 572.    Assuming *arguendo* that those allegations could constitute a First Amendment retaliation claim, *id*. at 572-73, we nevertheless concluded that they did not establish the violation of a clearly established right, explaining our reasoning, in part, as follows:

> When a public official is sued for allegedly causing a third party to take some type of adverse action against plaintiff's speech, we have held that defendant's conduct *must be of a particularly virulent character*.  It is not enough that defendant speaks critically of plaintiff or even that defendant directly urges or influences the third party to take adverse action.  Rather, *defendant must "threaten" or "coerce" the third party to act*.

12

*Id*. at 573 (emphasis added). We ordered dismissal of the case on the basis of qualified immunity. *Id*. at 574. *McLaughlin* thus suggests that a government official like Mercatili would not necessarily understand that mere political pushback could be unlawful.

In that same vein, we cited in *McLaughlin*, with approval, a decision of the United States Court of Appeals for the Fourth Circuit recognizing that, when a public official's allegedly retaliatory acts "are in the form of speech," the official's "own First Amendment speech rights are implicated." *Id*. at 573 (quoting *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 687 (4th Cir. 2000)). Mercatili's First Amendment speech rights are likewise implicated here, and our cases do not provide government officials with clear guidance as to when a government official's own speech can nevertheless constitute unconstitutional retaliation.

Also important to our analysis in *McLaughlin* was our prior decision in *R.C. Maxwell Co. v. Borough of New Hope*, 735 F.2d 85 (3d Cir. 1984). In that case, the defendant borough council wrote to a third party, Citibank, urging it to remove certain commercial billboards and threatening to litigate if the billboards were not removed. *Id*. at 86-87. Citibank acquiesced, admitting that it was motivated, in part, by a desire to stay in the borough's "good graces." *Id*. at 87. Afterwards, the plaintiff, who had leased billboard space from Citibank, sued the borough for violating the First Amendment right to free expression. We concluded that the borough's actions did not "coerce" the third party sufficiently to be a trigger of any constitutional violation. *Id*. at 89. In *McLaughlin*, we read the holding of *R.C. Maxwell* to mean that "strongly urging or influencing, but not 'coercing[,]' a

13

third party to take adverse action affecting a plaintiff's speech did not violate plaintiff's constitutional rights." 271 F.3d at 573. We did not elaborate on that distinction, nor did we provide specific examples of behavior that would cross the line from permissible influence to constitutionally impermissible coercion.

The present case, though, does not appear to involve coercion. Unlike the defendant's threats in *R.C. Maxwell*, Mercatili's efforts to pressure members of the Prison Board were not even coercive enough to achieve their desired effect. By Zaloga's own admission, none of the Board members complied with Mercatili's wishes by voting against renewal of the Borough's contract with Correctional Care. *Cf. Zherka v. Amicone*, 634 F.3d 642, 646 (2d Cir. 2011) (observing that in retaliation cases involving "speech against speech" there should be a "threshold of measurable harm required to move government response to public complaint from the forum of free speech into federal court"). Thus, even if we were to characterize Mercatili's alleged statements to Prison Board members as a "threat" to withdraw political support, there is ample room to debate whether a reasonable official would have known that such threats, without any evident coercive power, were constitutionally out of bounds.[4]

---

[4] There may of course be circumstances in which political threats carry a potential for coercion that is plain or can at least be fairly anticipated. That may present a different case. But on this record, even viewed in the light most favorable to the Plaintiffs, it can only be said that Mercatili hoped his political horse-trading would get what he wanted, not that he had the power to force anything.

Finally, it has never been established that a governmental official who does not himself retaliate but instead pressures another individual to retaliate – which is the position Mercatili is in – can be held personally liable. At least one of our sister circuits has held that there is no liability in such circumstances, *see Beattie v. Madison Cty. Sch. Dist.*, 254 F.3d 595, 601 (5th Cir. 2001) (observing that government officials "cannot be liable independently if they did not make the final decision"), and another has noted that this remains an unsettled question of law, s*ee Trant v. Oklahoma*, 754 F.3d 1158, 1170 n.5 (10th Cir. 2014) (observing that the Fifth Circuit has held that "only final decisionmakers may be liable" and noting that this is an unsettled question in the Tenth Circuit).

We conclude that legal precedent leaves space for good faith disagreement about the constitutionality of Mercatli's alleged actions. Under the high standard for "clearly established" law, that is enough to defeat the Plaintiffs' challenge to qualified immunity.

## V.   CONCLUSION

For the foregoing reasons, we will reverse the District Court's order denying Mercatili's motion for summary judgment on the basis of qualified immunity and remand with instructions to enter judgment in his favor.

15