NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-2073
_____

ENID SANTIAGO,
                    Appellant

v.

NEW YORK & NEW JERSEY PORT AUTHORITY;
GREGORY NOA, Tunnel & Bridge Agent;
ANTHONY FITZGERALD;
TIMOTHY MCGOVERN;
SERGEANT  FLEMMINGS;
CAPTAIN  BURNS;
CHIEF CHARLES TORRES, sued individually, jointly and severally
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.N.J. No. 2-11-cv-04254)
District Judge:  Honorable William J. Martini
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
March 24, 2017

Before:  SMITH, *Chief Judge*, JORDAN, and ROTH, *Circuit Judges*.

(Filed: April 24, 2017)
_____

OPINION*
_____

_____

    * This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

JORDAN, *Circuit Judge*.

Enid Santiago appeals from the grant of summary judgment against her on her claim that she was terminated from her job as a police officer with the Port Authority of New York and New Jersey in retaliation for exercising her First Amendment rights. Because Santiago filed this appeal after the deadline for doing so, the Port Authority and the other defendants argue that we should dismiss the appeal for lack of jurisdiction. We conclude that we do have jurisdiction to hear Santiago's appeal, and, for the reasons that follow, we will affirm.

## I.     Factual Background[1]

After she lost her job as a probationary police officer, Santiago brought suit in the United States District Court for the District of New Jersey against the Port Authority and Gregory Noa, a Tunnel and Bridge Agent with the Port Authority, as well as several Port Authority police officers.[2] Santiago had been hired by the Port Authority's Public Safety Department as a police recruit in October of 2008 and, following graduation from the police academy, was sworn in as a probationary police officer in April of the next year. From that time until early October 2009, she served without incident.

---

[1] Because we are reviewing a grant of summary judgment, we recount the facts in the light most favorable to Santiago and draw all reasonable inferences in her favor. *Zaloga v. Borough of Moosic*, 841 F.3d 170, 172 n.1 (3d Cir. 2016) (citing *Scheetz v. The Morning Call, Inc.*, 946 F.2d 202, 205 (3d Cir. 1991)).

[2] The remaining individual defendants are Captain Burns, Chief Charles Torres, Lieutenant Anthony Fitzgerald, Lieutenant Timothy McGovern, and Sergeant Flemmings.

On October 6, 2009, Santiago was assigned to work outside the Lincoln Tunnel at Post 24, where she was responsible for directing vehicles too tall for the tunnel to turn around in a nearby parking lot. Prior to that date, she had successfully extricated at least ten over-height vehicles from the Tunnel's entrance. Shortly after midnight, Santiago responded to an alarm that an over-height truck was heading toward the entrance of the Tunnel. While Santiago attempted to assist the truck driver in turning around the truck, Noa appeared and began to interfere by giving instructions to the driver.[3] Santiago told Noa to stop interfering. She then went to stop incoming traffic so that the truck could complete the turnaround with her further guidance. At that time, she saw Noa gesturing to the driver in a manner that suggested the driver continue moving. Before she could give her instructions, the truck struck a parked vehicle belonging to a Tunnel and Bridge Agent. Santiago and Noa then got into an argument and Santiago called for additional police officers.

While Santiago was still "on post," she completed a motor vehicle accident report and another document described simply as a "handwritten report." (App. at 521.) Detective Lieutenant Jose Alba described a handwritten report as a type of filing that officers can use to report anything "out of the ordinary … up to the proper chain of command." (App. at 651.) Santiago's handwritten report complained of Noa's interference with police operations, behavior which Santiago called "unacceptable and

---

[3] As a Tunnel and Bridge Agent, Noa was assigned to work in the emergency parking area at the entrance of the Lincoln Tunnel, adjacent to where Santiago was attempting to turn around the over-height truck. Since he was not a police officer with the Port Authority, he was not to assist in turning around over-height vehicles.

harmful to the public." (App. at 154.) After her shift, Santiago submitted the two reports to her commanding officer, Captain Burns.

There is no rule or regulation that required Santiago to file that handwritten report, and no one requested that she file it. Santiago testified that she filed the report because Noa was "hindering [] police activity," (App. at 518), which she claimed "was a matter of public safety and [] needed to be reported." (App. at 408.) Santiago feared that Noa could cause "someone [to] get hurt." (App. at 518.) At least five other Port Authority employees who witnessed or responded to the accident also filed handwritten reports.

A six-month investigation ensued, which Santiago demeans as a sham. During the investigation, she gave several statements regarding what transpired, some of which varied as to her physical location relative to the truck during the accident. The investigation concluded that Santiago was responsible for the accident. It was further determined that Santiago had been dishonest during the investigation, and her probationary job was terminated. That firing occurred one day before her probationary period was set to end.

## II. Procedural Background

Santiago sued, alleging that the individual defendants violated her constitutional rights to free speech, petition, equal protection, and due process under the First, Fifth, and Fourteenth Amendments. She further alleged that the Port Authority had a policy, custom, practice, and usage of discriminating against women and minorities, and of retaliating against officers who engage in whistleblowing or complaining about unlawful employment practices.

4

The defendants moved for summary judgment, which the District Court granted on March 22, 2016. As to her First Amendment retaliation claim, the Court held that Santiago's handwritten report concerned her workplace duties and was sent up the chain of command, making it "a classic example of a statement made pursuant to an employee's official duties." (App. at 16 (internal quotation omitted).) That is the only ruling that Santiago appeals.

Pursuant to Federal Rule of Appellate Procedure 4(a)(1)(A), Santiago had thirty days to file a notice of appeal, which meant that she had to have filed it by April 21, 2016. Unfortunately, she was a day late. Then, on May 10, 2016, she asked the District Court to extend the time for her appeal. Her counsel argued that, upon receiving notice of the order granting summary judgment, he had asked his secretary to note the filing deadline, but that the secretary mistakenly thought that March was a 30-day month, causing her to mark April 22 rather than April 21 as the deadline. The District Court granted the extension, finding that Santiago had requested it within the requisite time period and had shown excusable neglect. The defendants challenge that ruling and maintain that the appeal should be dismissed for lack of jurisdiction.

## III. Jurisdiction

The District Court had jurisdiction pursuant to 18 U.S.C. § 1331. Whether we have jurisdiction under 18 U.S.C. § 1291 is contested because of the tardy notice of appeal. "[T]he timely filing of a notice of appeal in a civil case is a jurisdictional requirement." *Bowles v. Russell*, 551 U.S. 205, 214 (2007). Pursuant to Federal Rule of Appellate Procedure 4, only "[d]istrict courts have limited authority to grant an extension

5

of the 30-day time period." *Id.* at 208. Here, the District Court granted Santiago an extension pursuant to subsection (a)(5)(A) of that Rule, which provides for an extension when "(i) a party so moves no later than 30 days after the time prescribed by this Rule 4(a) expires; and (ii) … shows excusable neglect or good cause." We review the District Court's exercise of that limited authority for an abuse of discretion. *Ragguette v. Premier Wines & Spirits*, 691 F.3d 315, 322 (3d Cir. 2012).[4]

On this record, we cannot say that the District Court abused its discretion in granting Santiago an extension. The appeal was filed a day late due to a misunderstanding. Santiago plainly satisfied subsection (i) of Rule 4(a)(5)(A) by filing her motion for an extension of time within the thirty-day window following the deadline for filing a notice of appeal. She also satisfied subsection (ii) because the one-day delay caused by the miscalculation was de minimis, was not prejudicial to the defendants, and was devoid of any hint of bad faith. *See id.* at 319 (relying on *Pioneer Invs. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993), to establish four key factors for courts to consider in determining excusable neglect: "(1) the danger of prejudice to the non-movant; (2) the length of the delay and the impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith" (internal quotation omitted)).

---

[4] "The district court abuses its discretion if its decision rests upon a clearly erroneous finding of fact, an errant conclusion of law, or the improper application of law to fact." *Ragguette v. Premier Wines & Spirits*, 691 F.3d 315, 322 (3d Cir. 2012). "An abuse of discretion may also occur when no reasonable person would adopt the district court's view." *Id.* (quoting *In re Cendant Corp. Prides Litig.*, 233 F.3d 188, 192 (3d Cir. 2000) (further quotations omitted)). Unless there is a clear error of judgment, however, we will not interfere with the district court's exercise of discretion. *Id.*

6

There is no basis to hold that the District Court "committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors[,]" *id.*, and, thus, we have jurisdiction to hear Santiago's appeal.

## IV.    Discussion[5]

The only issue on appeal is whether the District Court properly granted summary judgment to the defendants on Santiago's First Amendment retaliation claim. Santiago argues that the Court misapplied *Garcetti v. Ceballos*, 547 U.S. 410 (2006), in determining that her handwritten report was not protected by the First Amendment. But *Garcetti* instructs that, "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Id.* at 421. Such protection applies to a public employee's statement only "when (1) in making it, the employee spoke as a citizen, (2) the statement involved a matter of public concern, and (3) the government employer did not have 'an adequate justification for treating the employee differently from any other member of the general public' as a result of the statement he made." *Hill v. Borough of Kutztown*, 455 F.3d 225, 241-42 (3d Cir. 2006) (quoting *Garcetti*, 455 F.3d at 418).

---

[5] Because the District Court granted the defendants' motion for summary judgment, we will review its ruling *de novo*, applying the same standard that it applied. *Shelton v. Bledsoe*, 775 F.3d 554, 559 (3d Cir. 2015). In so doing, we must review the record in the light most favorable to Santiago and draw all inferences in her favor to determine whether the defendants demonstrated that there was no genuine dispute of material fact and that they are entitled to judgment as a matter of law. *Id.*; Fed. R. Civ. P. 56(a).

Whether a public employee's speech was made pursuant to the employee's official duties is a practical inquiry. *Dougherty v. Sch. Dist. of Phila.*, 772 F.3d 979, 988 (3d Cir. 2014) (citing *Garcetti*, 547 U.S. at 424). We have, however, endeavored to provide contours for that inquiry. *Id.* One of those comes from our holding in *Foraker v. Chaffinch*, 501 F.3d 231 (3d Cir. 2007), which declined to extend First Amendment protection to the speech of police officers who were, pursuant to their job duties, "report[ing] problems … up the chain of command." *Id.* at 241 *abrogated on other grounds by Borough of Duryea v. Guarnieri*, 564 U.S. 379 (2011). That was a specific example of "[t]he critical question under *Garcetti*[,]" namely, "whether the speech at issue is itself ordinarily within the scope of an employee's duties[.]" *Dougherty*, 772 F.3d at 990 (quoting *Garcetti*, 547 U.S. at 421) (first alteration in *Dougherty*). Here, viewing all of the facts in the light most favorable to Santiago,[6] several reasons direct that the answer to that question must be that the submission of her handwritten report regarding the danger Noa presented to the public was within the scope of her ordinary duties.

First, Santiago was a probationary police officer with the Port Authority's Public Safety Department, the entire aim of which is to protect the public. By the very nature of her position, Santiago was expected to report public safety problems. It is, of course,

---

[6] "Whether a particular incident of speech is made within a particular plaintiff's job duties is a mixed question of fact and law." *Dougherty v. Sch. Dist. of Phila.*, 772 F.3d 979, 988 (3d Cir. 2014) (alterations omitted) (internal quotation omitted). "Specifically, the scope and content of a plaintiff's job responsibilities is a question of fact, but the ultimate constitutional significance of those facts is a question of law." *Flora v. Cty. of Luzerne*, 776 F.3d 169, 175 (3d Cir. 2015).

expected that a police officer will report risks to public safety up the chain of command. *Foraker*, 501 F.3d at 241. That would be particularly true when the risk is caused by another employee of the government agency. Santiago attempts to argue that such a report would not be expected of a probationary police officer like her, but that is not a reasonable inference. Recognizing and reporting risks is something that her position as a police officer – probationary or not – compelled her to do. *See Dougherty*, 772 F.3d at 988 (considering whether public position compelled the employee to report the information at issue). And the fact that she submitted the handwritten report, along with the motor vehicle accident report, to her commanding officer demonstrates that Santiago was doing just that.

Santiago repeatedly argues that filing the handwritten report was protected speech because it was not "required." But the filing of the report is still properly seen as being within her ordinary duties, even if it was not mandatory. In *Garcetti* itself, the plaintiff sent an internal memorandum to his supervisors that was pursuant to his job responsibilities, but not strictly required. *Garcetti*, 547 U.S. at 421-22. Similarly, here, Santiago had a responsibility to ensure public safety, especially regarding traffic in and around the Lincoln Tunnel, even if she was not strictly required to file a handwritten report as part of carrying out that responsibility. Therefore, her attempt to have this case turn on whether the handwritten report was required by a formal rule is, on these facts, unsupportable.

Second, Santiago did not speak to the public, but directed her speech up the chain of command. While the audience is certainly not a dispositive factor, it is an important

9

one.  In *Dougherty v. School District of Philadelphia*, an employee of the School District who believed that the District was engaging in unlawful discrimination reported his concerns to the press.  772 F.3d at 983-84.  We decided that the report was outside the employee's duties because there was nothing in his position as an operations manager that would compel him to report such information to a newspaper; instead, the employee was concerned about discrimination and wanted to report it as a private citizen.  *Id.* at 988.  Similarly, in *Flora v. County of Luzerne*, a public defender, whose responsibility was to represent indigent criminal defendants, was terminated by the County after he brought a class action against the County on behalf of such defendants, alleging that they were poorly represented because of serious funding shortfalls in the Office of the Public Defender.  776 F.3d 169, 172 (3d Cir. 2015).  We concluded that it was not ordinarily within the scope of the job responsibilities of a public defender to file a class action.  *Id.* at 179-80.  In the most recent Supreme Court case applying *Garcetti*, a public employee, Lane, was called to testify in criminal proceedings against an employee whom Lane had fired after discovering that the employee was on the payroll but did not show up to work.  *Lane v. Franks*, __ U.S. __, 134 S. Ct. 2369, 2379 (2014).  The Court explained that the sworn testimony was plainly outside Lane's official duties and that such testimony "is far removed from the speech at issue in *Garcetti* – an internal memorandum prepared by a deputy district attorney for his supervisors recommending dismissal of a particular prosecution." *Id.*

The speech at issue before us is obviously different than the speech in those cases in which First Amendment protection was afforded.  Santiago's handwritten report was

10

not made to the press, a judge, or a jury. Instead, as in *Garcetti* and *Foraker*, it was an internal report that went up the chain of command. That distinction weighs strongly against finding that Santiago spoke outside her official duties.

Third, the report was prepared while Santiago was on duty. The fact that her speech occurred at work is far from dispositive. *See Garcetti*, 547 U.S. at 420-21 ("Employees in some cases may receive First Amendment protection for expressions made at work. Many citizens do much of their talking inside their respective workplaces, and it would not serve the goal of treating public employees like any member of the general public to hold that all speech within the office is automatically exposed to restriction" (internal citations and quotation omitted)). But it tends in this case to show that she was, as a practical matter, acting within her official duties. She prepared the handwritten report regarding Noa while she was "on post." (App. at 523.) She did so at the same time she prepared the motor vehicle accident report that was required for the incident. Those reports were both submitted together to her commanding officer at the conclusion of her shift, providing further evidence that the handwritten report was made pursuant to her official duties.

Fourth, and finally, in deciding whether preparing and submitting the handwritten report was part of Santiago's "ordinary job responsibilities," *Flora*, 776 F.3d at 179, we consider the fact that nearly every Port Authority employee who witnessed or responded to the accident ultimately filed a handwritten report. Handwritten reports, while not required in every circumstance, are a means to report anything "out of the ordinary … up to the proper chain of command." (App. at 651.) Completing such reports is something

11

that Santiago learned during her training in the police academy and further demonstrates that, as a practical matter, it was plainly within her official duties.

Taking the facts presented and drawing all reasonable inferences in Santiago's favor, we agree with the District Court that Santiago was not speaking as a citizen when she delivered to the chain of command a handwritten report regarding a safety incident involving another employee. That conclusion resolves the case, so we need not reach the remaining two requirements of the *Garcetti* test to hold that Santiago's report is not protected activity under the First Amendment. We will therefore affirm the grant of summary judgment in favor of the defendants on Santiago's First Amendment retaliation claim.[7]

## V.    Conclusion

For the foregoing reasons, we will affirm.

---

[7] Another basis for summary judgment that the defendants asserted below was qualified immunity. The defendants again raise that issue on appeal, even though the District Court did not reach it. Because we affirm on the merits, we do not address qualified immunity.