**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-1228
_____

*JOMEAR K. MARTIN, Administrator for the
Estate of AL-QUADIR WEBB,
                                    Appellant

v.

CITY OF NEWARK, NEWARK POLICE DEPARTMENT,
SAMUEL A. DEMAIO, As Director of the Newark Police
Department, POLICE OFFICER KEVIN JOHNSON and
POLICE OFFICER WYHIDI WILSON of the Newark
Police Department, Individually and as employees of
the Newark Police Department

* (Amended pursuant to Clerk's Order dated 7/13/18)
_____

On Appeal from the United States District Court for the
District of New Jersey
(D.C. No. 2-12-cv-03592)
District Judge:  Hon. Madeline Cox Arleo

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
October 29, 2018

Before:  CHAGARES, JORDAN, and VANASKIE, <u>Circuit</u> <u>Judges</u>.

(Filed: December 28, 2018)
_____

OPINION*
_____

_____

    * This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7,
does not constitute binding precedent.

CHAGARES, Circuit Judge.

The plaintiff, Jomear K. Martin, is the administrator of decedent Al-Quadir Webb's estate. Martin appeals the District Court's grant of summary judgment in favor of the City of Newark, the Newark Police Department ("NPD"), NPD Director Samuel A. DeMaio, and Police Officers Wyhidi Wilson and Kevin Johnson (collectively "the defendants"). The court granted the defendants' motion for summary judgment primarily based on its determination that Officer Wilson acted objectively reasonably and was entitled to qualified immunity for his use of deadly force against Webb. For the following reasons, we will affirm.

I.

Because we write principally for the parties, we recite only those facts necessary to our decision.

The parties offer competing versions of the events leading to Wilson's use of force against Webb. According to the defendants, Wilson and Johnson were in a marked police car parked on Clinton Avenue in Newark on October 15, 2011, when Wilson heard screeching tires, and both officers saw a Chrysler traveling in their direction at "a high rate of speed." Appendix ("App.") 85. The Chrysler drove past the officers and turned left onto Johnson Avenue. Johnson made a U-turn on Clinton Avenue, turned on the car's emergency lights and sirens, and followed the Chrysler. The officers saw the Chrysler park in front of 25 Johnson Avenue.

2

The officers, intending to conduct a motor vehicle stop, parked on Johnson Avenue as well. They observed the driver of the Chrysler, later identified as Webb, get out of the car and get onto the sidewalk. Both saw Webb "holding his right hand side waistband area" and believed he might have been armed. Id. They exited the patrol car, and Wilson requested that Webb take his hand away from his waist. "Webb stated, 'Fuck that,' and ran around the back of the Chrysler . . . to the driver's side door . . . , still holding onto his right side." App. 86. Wilson ran after Webb, yelling to see his hands. Webb got back into his car, and, "[a]lthough Webb tried to shut the driver's door, Wilson had positioned himself between the door and the driver's seat." Id.

At the open car door, Wilson struggled to take hold of Webb's left hand, which was reaching toward Webb's right side. Webb's right hand reached to start the car. Wilson yelled: "Don't start the car. Let me see your hands." Id. Webb responded "Fuck you." Id. After Webb started the car, he "pressed on the gas" and "started to drive away, with Wilson still wedged between the open door and the driver's seat." Id. Wilson, who yelled at Webb to stop the car, took out his service weapon. Webb's car accelerated with some portion of the officer's body inside of the car, pulling him down the street with the car. Fearful that he would be run over, Wilson fired his gun in Webb's direction three times. The officer fell onto the street as the car continued traveling toward the cul-de-sac at the end of Johnson Avenue. Webb's car hit a parked car and flipped over, landing on its passenger side.[1]

---

[1] Johnson, who did not fire his gun, estimated that the incident lasted fifteen seconds.

3

The plaintiff advances the following version of events, as relayed by witness Alqumar Jones in a statement to a private investigator two weeks after the shooting.[2] Ms. Jones saw a police car arrive on Johnson Avenue after the driver of the Chrysler was on the sidewalk and heard an officer say, "come here" and "that car is stolen." App. 1057. The driver responded "this is my car and I got the papers on it," and "no, fuck you." Id. The driver then quickly reentered his car. After Webb cursed at him, the officer's demeanor changed — he approached the open driver's side door and tried to pull the driver out of the Chrysler. The officer warned Webb that he would shoot him if he turned the car on. After Webb started the car, the officer leaned into the Chrysler and shot him. Ms. Jones stated that the officer was not dragged by the car, which only moved after the shots.

Webb was shot in the back and rendered a paraplegic. On May 22, 2014, he passed away. Although Webb was charged with several offenses following the shooting, including possession of a weapon (a car) for an unlawful purpose and eluding arrest, the charges were dismissed after his death.

A ballistics report revealed that Wilson's weapon was no more than 96 inches away from Webb at the time of the shooting. According to the defendants' shooting

---

[2] The defendants' Rule 56 Statement mentions Ms. Jones' contradictory grand jury testimony, as well as Marshella Whitaker's statement to the private investigator and inconsistent grand jury testimony five years later. Because the plaintiff relies on Ms. Jones' October 2011 statement, we consider only that statement for purposes of this appeal. See Zaloga v. Borough of Moosic, 841 F.3d 170, 172 n.1 (3d Cir. 2016) ("For purposes of summary judgment, we recount the facts as alleged by the plaintiffs, accepting them as true and drawing all factual inferences in their favor.").

4

reconstruction expert, the shot that struck Webb came through the driver's side front window. The expert opined that "the forward movement and acceleration of the [Chrysler] caus[ed] the open driver's side front door to swing towards the closed position while a portion of [Officer] Wilson's body [wa]s between the door and the chassis of the vehicle," which "place[d] the muzzle of [his] firearm drawn from his duty holster on his left side in a position on the exterior side of the driver's side front door window glass at the time of discharge while the vehicle [wa]s in motion." App. 995. The expert also concluded that a second bullet fired by Wilson as he "separated from the vehicle due to its southerly acceleration" hit the rear bumper of the Chrysler. Id. The expert was unable to determine the timing of or flight path for the third bullet. Ultimately, he concluded that the evidence examined was "consistent with the statement of [Officer] Wilson." App. 998.

Webb filed a complaint against the officers, DeMaio, NPD, and Newark. After Webb's passing, Martin was substituted as the plaintiff. An amended complaint was filed, raising the following causes of action under 42 U.S.C. § 1983 and New Jersey law: claims against the officers for excessive force (count two), and the remaining defendants for failure to adequately train and supervise (count four) and for their policies and practices that permit the use of excessive force (count one); against the officers and the remaining defendants, vicariously, for assault and battery (count five); against Newark, NPD, and DeMaio for negligent hiring and retention (count six); and against all of the

5

defendants for wrongful death (count seven).[3]  The defendants successfully moved for summary judgment.

The District Court held that Wilson was entitled to qualified immunity because his use of deadly force was neither objectively unreasonable nor against clearly established law.  Consequently, it dismissed the derivative § 1983 claims against Newark and DeMaio.  "Given the reasonableness" of Wilson's use of force, the court found him immune — and Newark, NPD, and DeMaio derivatively immune — from liability under the New Jersey Tort Claims Act as to the state law claims against those defendants.  App. 15, 18.  The court then dismissed all of the claims against Johnson due to his lack of involvement in, or responsibility to prevent, the force used against Webb; the § 1983 claims against DeMaio due to his lack of personal involvement in the shooting and the lack of a constitutional violation by Wilson; and the § 1983 claims against NPD, as it is an improper defendant.[4]  The plaintiff now appeals the order granting summary judgment.

## II.

The District Court had jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 and 1367, and this Court's appellate jurisdiction is based on 28 U.S.C. § 1291.  We

---

[3] The plaintiff also asserted that Newark, NPD, and DeMaio violated § 1983 and the New Jersey Constitution by restraining his freedom during his hospitalization (count three).  The court granted summary judgment on that claim after finding that the plaintiff had abandoned it and, alternatively, failed to present evidence as to its essential elements.  The plaintiff does not challenge that dismissal on appeal, so we will not address it.  Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist., 877 F.3d 136, 145 (3d Cir. 2017).

[4] The plaintiff does not challenge the ruling as to NPD on appeal, so we do not address it.  Barna, 877 F.3d at 145.

exercise plenary review over the grant of summary judgment, <u>Curley v. Klem</u>, 298 F.3d 271, 276 (3d Cir. 2002), which is warranted if the movant demonstrates "that there is no genuine dispute as to any material fact and [it] is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a). As part of this review, this Court ascertains whether, as gleaned from "the facts and inferences from them [viewed] in the light most favorable to" the plaintiff, there is a genuine issue of material fact. <u>Crissman v. Dover Downs Entm't Inc.</u>, 289 F.3d 231, 233 (3d Cir. 2002). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party" and material if it "might affect the outcome of the suit under the governing law." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

## III.

### A.

We address the § 1983 claim against Wilson first. Qualified immunity operates to protect a public official from civil liability — even litigation — so long as he did not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Pearson v. Callahan</u>, 555 U.S. 223, 231 (2009) (quoting <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982)). To determine the doctrine's applicability, a court must ascertain whether the facts shown by the plaintiff "make out a violation of a constitutional right" and whether that right "was clearly established at the time of [Wilson's] alleged misconduct." <u>Id.</u> at 232 (quotation marks omitted). A right is clearly established if precedent places its existence beyond debate, such that only "the plainly incompetent or those who knowingly violate the law" are not shielded by qualified

7

immunity. Kisela v. Hughes, 138 S. Ct. 1148, 1152 (2018) (quotation marks omitted). In determining that right, we must keep in mind the Supreme Court's repeated directives "not to define clearly established law at a high level of generality" and instead conduct this analysis "in light of the specific context of the case." Mullenix v. Luna, 136 S. Ct. 305, 308 (2015) (quotation marks omitted).

Many of the facts in this case are disputed.[5] Yet, when those disputes are viewed in the plaintiff's favor, the "specific context of the case," id., is as follows. Prior to the shooting, Webb had cursed at Wilson and "attempted to walk away from [him] to avoid a confrontation," quickly walking to and reentering a car that the officer referred to as stolen. App. 111. The two engaged in a struggle at the open driver's side door, with Webb seated in the driver's seat and Wilson's hands inside of the car. Webb ignored the officer's warning that he would fire his weapon if Webb started the car. In the light most

[5] The plaintiff challenges the application of qualified immunity in part by arguing that the District Court impermissibly resolved factual disputes regarding whether the motor vehicle stop was lawful, whether the officers reasonably believed Webb was armed, and whether Wilson was being dragged by the car when he shot Webb. But those facts are not material to our conclusion. The plaintiff also argues that the court erroneously found uncontested Wilson's position (between the car and the car door) at the time of the shooting. The only evidence the plaintiff offered otherwise was a statement by Johnson that Wilson was "half inside the driver's side window" during the struggle. App. 1039. But Johnson ultimately testified that he could not recall if the struggle took place "in the window or partially with the door being opened," but that it could have been either one. App. 360-61. In light of Wilson's testimony, Jones' statement, and the expert report, all of which place Wilson at the open car door, Johnson's equivocal testimony does not create a genuine issue of fact. We note that, contrary to the District Court's determination, the parties do dispute whether the car was moving at the time of the shooting. We view that fact in the plaintiff's favor and proceed with our analysis assuming that the car had not yet moved when Wilson fired his gun.

8

favorable to the plaintiff, Wilson shot Webb, at the earliest, "[a]s Mr. Webb turned the key in the ignition." App. 111.

We agree with the District Court's conclusion that Wilson's conduct was objectively reasonable and not contrary to clearly established law. "The reasonableness of a seizure is assessed in light of the totality of the circumstances," and often, as here, "a proper assessment of the threat of injury . . . is crucial to identifying the magnitude of the governmental interests at stake." Johnson v. City of Phila., 837 F.3d 343, 349-50 (3d Cir. 2016). Wilson was faced with an erratic and noncompliant driver who disregarded his explicit warning not to start the car, despite Wilson's proximity to, and presence (of at least his hands) within, the vehicle. Webb posed a threat to Wilson's life: being injured by a moving vehicle. Scott v. Harris, 550 U.S. 372, 382 n.9 (2007) (noting that a suspect's "flight itself" may "pose[] the threat of serious physical harm . . . to others" (second alteration in original) (quotation marks omitted)). Even assuming that the car had not yet moved at the time of the shooting, a reasonable officer in Wilson's position would have feared for his life given Webb's bold actions. Wilson need not have awaited movement of the car to protect himself. See Long v. Slaton, 508 F.3d 576, 580-81 (11th Cir. 2007) (holding that officer's shooting of a mentally unstable driver who drove away from the officer in a stolen police car was objectively reasonable because "the law does not require officers in a tense and dangerous situation to wait until the moment a suspect uses a deadly weapon to act to stop the suspect").

The plaintiff advances two additional arguments to demonstrate that Wilson acted unreasonably: first, that Wilson's conduct violated the Attorney General of New Jersey

9

Guidelines, and second, that Wilson's use of force could only have been justified if he "effected a legal traffic stop, proceeded with his investigation . . . in an appropriate way, and then act[ed] legally in his pursuit of Mr. Webb." Pl. Br. 26. We reject the plaintiff's first contention because, assuming the guidelines factor into this analysis, the inquiry pursuant to the guidelines is the same as the objective reasonableness assessment above, prohibiting the use of deadly force absent a reasonable belief that it is necessary to protect against imminent danger of death or serious injury. We reject the plaintiff's second argument because, assuming the traffic stop was unlawful, it is foreclosed by County of Los Angeles, California v. Mendez, 137 S. Ct. 1539, 1547 n.*1 (2017), which held that an objectively reasonable use of force "may not be found unreasonable by reference to some separate constitutional violation."

Alternatively, we agree that, at a minimum, Wilson is entitled to qualified immunity because it was not clearly established, in October 2011, that an officer uses excessive force when he shoots at a driver who starts a car despite having been warned not to and does so while the officer is positioned between the car and its open driver's side door. The plaintiff does not point to any controlling authority or "robust consensus of cases of persuasive authority" that place the answer to this question beyond debate. Sauers v. Borough of Nesquehoning, 905 F.3d 711, 719 (3d Cir. 2018) (quoting Mammaro v. N.J. Div. of Child Prot. & Permanency, 814 F.3d 164, 169 (3d Cir. 2016)). Instead, he points to Tennessee v. Garner, 471 U.S. 1 (1985), and Abraham v. Raso, 183 F.3d 279 (3d Cir. 1999), neither of which accomplishes that aim. Garner did not concern the clearly defined right at issue; it only established the general principle that deadly

10

force "may not be used unless it is necessary to prevent [a suspect's] escape and the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others." Garner, 471 U.S. at 3. The Supreme Court has explained that Garner does not itself "create clearly established law outside an obvious case." Kisela, 138 S. Ct. at 1153 (quotation marks omitted). We do not believe this to be such an "obvious case," and, as explained above, the circumstances here reveal that a reasonable officer could have believed that Webb's conduct posed a significant threat.

Raso is likewise of little help. First, it merely reiterated Garner's general principle. Raso, 183 F.3d at 289. Second, in Raso, we did not render a holding concerning qualified immunity or, for that matter, objective reasonableness — instead, we reversed a grant of summary judgment in favor of an officer who shot at a moving vehicle containing a fleeing shoplifter after finding a dispute of fact regarding whether the officer was in any danger at all at the time of the shooting. Id. at 294-95.

On the other hand, guidance from the Supreme Court reveals that officers who shoot suspects "set on avoiding capture through vehicular flight, when persons in the immediate area are at risk from that flight," do not violate clearly established law. Brosseau v. Haugen, 543 U.S. 194, 200-01 (2004). In Brosseau, a suspect ignored an officer's demands at gunpoint to exit his car and instead attempted to start the car. Id. at 196. The officer shattered the driver's car door window and struggled with him through the window to gain control of the car keys. Id. Nonetheless, the suspect started the car. Id. Concerned for the safety of people nearby, the officer "jumped back" from the car as

11

it "started or shortly after it began to move" and shot at the driver.  Id. at 196-97.  The Supreme Court affirmed that Brosseau was entitled to qualified immunity.  Id. at 201. Because the plaintiff had not provided "controlling authority or a robust consensus of cases of persuasive authority" clearly establishing the illegality of Wilson's conduct, the District Court properly concluded that the plaintiff was unable to defeat qualified immunity.  Plumhoff v. Rickard, 572 U.S. 765, 779-80 (2014) (quotation marks omitted).

B.

The plaintiff also appeals the grant of summary judgment in the defendants' favor on his remaining claims:  his § 1983 claims against Newark and DeMaio; his state law claims against Newark, NPD, DeMaio, and Wilson; and his claims against Johnson.

Because the District Court properly concluded that Wilson's conduct was objectively reasonable, and therefore did not amount to a constitutional violation of Webb's rights, summary judgment in favor of Newark and DeMaio on the § 1983 claims against them was appropriate.  Absent an underlying constitutional violation, there can be no claim against Newark or DeMaio.  Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010); Grazier ex rel. White v. City of Phila., 328 F.3d 120, 124 (3d Cir. 2003).

Next, the plaintiff argues that the court's determination that Wilson, Newark, NPD, and DeMaio were entitled to summary judgment on the state law claims filed against them cannot stand "[b]ecause this legal determination was based on facts inappropriately found by the court."  Pl. Br. 43.  The plaintiff argues that the factual disputes he identified in the context of his excessive force claim cast doubt on the reasonableness of Wilson's actions and that (unidentified) "[q]uestions exist as to

12

whether Officer Wilson's actions were criminal, malicious, or willful."[6] Pl. Br. 44. As elucidated above, the facts in the light most favorable to the plaintiff reveal that Wilson's conduct was objectively reasonable. Moreover, the plaintiff does not point to anything in the record, nor does he make an argument, to support his contention that questions exist as to whether Wilson acted willfully, maliciously, or criminally.

Finally, we agree with the District Court that the claims against Johnson fail. To reiterate, those claims include a § 1983 claim of excessive force, a state law claim of assault and battery, and a state law claim of wrongful death. It is undisputed that Johnson did not use any force during the incident. Without evidence of Johnson's "personal involvement in the alleged violation," the plaintiff's claim that Johnson used excessive force must fail. Jutrowski v. Twp. of Riverdale, 904 F.3d 280, 291 (3d Cir. 2018). To the extent the plaintiff bases his § 1983 claim against Johnson on the officer's non-intervention in Wilson's use of force, that claim likewise fails, as liability on that theory only attaches if the relevant use of force was unlawful. See Smith v. Mensinger, 293

---

[6] To the extent that the plaintiff challenges the grant of summary judgment against him on his negligent hiring and retention claim, we conclude that that challenge is also meritless. Such an action imposes liability upon an employer "where it knew or had reason to know of the particular unfitness, incompetence or dangerous attributes of the employee and could reasonably have foreseen that such qualities created a risk of harm to other persons" and when the employee's "incompetence, unfitness or dangerous characteristics proximately caused [the plaintiff's] injury." Di Cosala v. Kay, 450 A.2d 508, 516 (N.J. 1982). The record, which reveals no sustained allegations of excessive force by Wilson before the incident at issue, lacks evidence indicating Wilson's dangerous attributes. Cf. Denis v. City of Newark, 704 A.2d 1003, 1007-08 (N.J. Super. Ct. App. Div. 1998) (concluding that the plaintiff had established a prima facie case of negligent retention partly because the police officer had been "disciplined for assaultive behavior on defenseless citizens" twice before the pertinent assault).

13

F.3d 641, 650-52 (3d Cir. 2002) (noting holding of sister appellate courts that officers have "a duty to take reasonable steps to protect a victim from another officer's use of excessive force" and explaining that officers may not "escape liability by turning either a blind eye or deaf ear to the illegal conduct of their colleagues" (emphasis added)). Summary judgment was warranted in Johnson's favor on the state law claims, as the plaintiff has not provided evidence, nor does he argue, that Johnson intentionally acted to cause Webb (to fear) a harmful or offensive contact, that he touched Webb without his consent, Leang v. Jersey City Bd. of Educ., 969 A.2d 1097, 1117 (N.J. 2009), or that a wrongful act by Johnson caused Webb's death, N.J. Stat. Ann. § 2A:31-1. Summary judgment in Johnson's favor was proper.

IV.

For the aforementioned reasons, we will affirm.